# TAUTE v. J. I. CASE THRESHING MACHINE COMPANY.

### (141 N. W. 134.)

**Contract — servant — agent — independent contractor.**

 1. A contract to the effect that "I agree to haul or run the F. T. rig, tender, and engine which is 12 miles north of Tolley, and separator which is 17 miles north of Tolley. I agree to furnish all help, fuel, and water to bring the same to Tolley, North Dakota. The J. I. Co. agrees to pay said K. (the signer of the instrument) the sum of thirty and 00/100 dollars; said rig to be hauled or brought to Tolley on or before October 20, 1910. The said 22 horse-power engine is supposed to be in good running order. If any repairs is needed will be furnished by J. I. Co." *Held*, to state the contract of an independent contractor, and not the obligation of a servant or agent.

**Trial court — findings — jury — liability — independent contractor.**

 2. Where an independent contractor undertakes to transport a threshing-machine engine along a country road, and at the time that the engine is delivered to him there is a crack or defect in the front end door of the fire box, and, after the engine has passed a point upon the highway, a fire is seen to start from a distance of some 4 or 5 feet from the same, but there is no evidence whatever that any fire escaped through the crack in the door, but, on the other hand, it is shown that the same was plastered with mud during the whole of the

---

Note.—The authorities on the general question who are independent contractors are collated in extensive notes in 65 L.R.A. 445, and 17 L.R.A. (N.S.) 371.

For a collection of the authorities on the employer's liability for acts of an independent contractor in setting out fire, see notes in 65 L.R.A. 654, 853; 17 L.R.A. (N.S.) 788; and 38 L.R.A. (N.S.) 175. See also note in 76 Am. St. Rep. 396, 420. And upon the liability where work is dangerous unless certain precautions are observed, see note in 65 L.R.A. 833.

For the general rule as to the absence of liability of an employer for acts of an independent contractor, see notes in 65 L.R.A. 622, and 14 L.R.A. 828.

journey so as to prevent the escape of sparks therefrom. The supreme court will not set aside the findings of the trial court who acted without a jury that no liability can be imputed to the owner of the engine on the theory that he has allowed an independent contractor to do that which is, in its nature, intrinsically dangerous.

Opinion filed April 8, 1913.

Appeal from the County Court of Renville County; *Percy S. Crewe,* J.

Action to recover damages for loss of property alleged to have been destroyed by fire claimed to have been started by sparks from defendant's threshing-engine while said engine was being moved by a third party under a contract. Judgment for Defendant. Plaintiff Appeals.

Affirmed.

On October 18, 1910, the defendant and respondent engaged one R. L. Kerr to move a threshing engine and separator a distance of some 12 to 17 miles, to Tolley, North Dakota. The contract was in writing, and was as follows: "I agree to haul or run the Frank Tudall rig, tender and engine, is 12 miles north of Tolley and separator is 17 miles north of Tolley. I agree to furnish all help, fuel, and water to bring the same to Tolley, North Dakota. The J. I. Case T. M. Co. agree to pay said R. L. Kerr the sum of $30, said rig to be hauled or brought to Tolley, North Dakota on or before October 20, 1910. The said 22 horse-power Buffalo-Pitts engine is supposed to be in good running order, and if any repairs are needed will be furnished by J. I. Case Company. (Signed) R. L. Kerr." The said Kerr moved the machinery to Tolley under said contract, hiring a man and team and an engineer to assist him, and, in moving such engine and machinery and for the purpose of accomplishing the same, he fired up the engine. The defendant did not in any way assist in the transaction, and gave no directions whatsoever in connection therewith. The employees of Kerr relied upon and upon him alone for their instructions. While the engine was being moved to Tolley, a fire started near the road along which the same was being moved, which destroyed the plaintiff's hay, for the loss of which this action is brought. This fire was not directly traced to the engine. One witness testifies that he did not see it start; that he first saw it about 4 feet from the wagon track. He was doing

team work, driving the water and straw tanks, and the fire was behind the engine. He could not swear whether the fire started from the engine or not. Kerr testified that he first saw the fire 5 or 6 rods behind the engine and about 2 rods from the road,—started about a rod from the road; might be less; he wondered how it had started. Did not know; could not say whether it started from the fire box or smokestack; he did not know that it started from the engine. The engineer testified that there was a crack in the door; that it blew out smoke; that he fixed it with mud; that the mud was there until he got to the river, and then he filled it with mud again; that there was mud there when he got to Tolley; that the engine was in proper shape to draw itself. There is, in fact, no testimony whatever as to the condition of the smokestack of the engine; that any sparks came therefrom, or that sparks at any time escaped from the crack in the door. There is testimony, however, that a year before, and in the fall of 1909, the engine was in bad condition. It was then an engine about fourteen or fifteen years old. The engineer then in charge of it testifies that he had to fix up the firebox during the season of 1909, and had to get Alabaster to put in there to keep the fire from coming out; also, that the front door was cracked. The crack, he judged, was "about $\frac{1}{4}$ inch wide, and the fire would keep coming out there right along. The door was on the front end of the firebox, about 3 feet from the ground. By reason of these defects as to the fire department of the engine, fires were started by the engine that fall. It would be pretty hard to say what the fires started from, there were so many places that leaked." The witness further testified that he set four fires with the engine that he knew of, and that the door or defective parts could have been fixed so that the fire could not have got out if there had been a new door put on. The witness, however, further testifies that he left the engine in the fall in better condition than when he got it, with the exception of the crack in the front door, though he testified that "it should be fixed up if you ran it a while." The engine was not used during 1910 until moved at the time of the fire in question, and on account of which this suit was brought. Prior to moving the engine in the fall of 1910, Kerr's engineer testified that some repairs were sent to him by the agent of the defendant, and that he put on a steam gauge, took out several loose joints, and put in a grate, and a tin pan in the smokestack. He said that some smoke came out

of the fire box when he was facing the wind, and that there was a crack in the door that blew out smoke. He, however, testified that he packed this crack with mud; "that this mud was on the front door when he pulled the engine into Tolley; that the engine was in shape to draw itself; that the engine was drawing all right when you were running against the wind, and your firebox was not packed too full of straw." The case was tried before the court without a jury, and the county judge found that the defendant was not guilty of any negligence, and did no act which contributed in any manner to the starting of the fire which destroyed the property of the plaintiff. He accordingly rendered judgment against the plaintiff for the dismissal of the action, with costs and disbursements to be taxed against him. From this judgment the plaintiff appeals.

*Grace & Bryans,* for appellant.

Kerr was not an independent contractor. He was a mere servant of the defendant. 16 Am. & Eng. Enc. Law, 187; Jensen v. Barbour, 15 Mont. 582, 39 Pac. 906; Ruehl v. Lidgerwood Rural Teleph. Co. 23 N. D. 6, — L.R.A.(N.S.) —, 135 N. W. 793; Whitney v. Clifford, 46 Wis. 138, 32 Am. Rep. 703, 49 N. W. 835; Robbins v. Chicago, 4 Wall. 675, 18 L. ed. 431; Ellis v. Sheffield Gas Consumers' Co. 2 El. & Bl. 769, 2 C. L. R. 249, 23 L. J. Q. B. N. S. 42, 18 Jur. 146, 2 Week. Rep. 19, 19 Eng. Rul. Cas. 180; 25 Cyc. 1559, and cases cited; 26 Cyc. 159, 1573.

*Bosard & Twiford,* for respondent.

If there was any negligence which caused damage to plaintiff, it was that of an independent contractor with defendant, and defendant is not liable. 1 Thomp. Neg. § 621, and cases cited in note 7, p. 569; Leavitt v. Bangor & A. R. Co. 89 Me. 509, 36 L.R.A. 382, 36 Atl. 998, 1 Am. Neg. Rep. 605.

Kerr was employed by defendant, as an independent contractor to do a lawful piece of work not dangerous, and over which defendant had no supervision. City & Suburban R. Co. v. Moores, 80 Md. 348, 45 Am. St. Rep. 345, 30 Atl. 643; St. Louis, I. M. & S. R. Co. v. Yonly, 9 L.R.A. 604, see note; Salliotte v. King Bridge Co. 65 L.R.A. 620, 58 C. C. A. 466, 122 Fed. 378; 1 Shearm. & Redf. Neg. 5th ed. §§ 164–167.

The injury did not result from the work itself. Ruehl v. Lidgerwood Rural Teleph. Co. 23 N. D. 6, — L.R.A.(N.S.) —, 135 N. W. 793; Davie v. Levy, 39 La. Ann. 551, 4 Am. St. Rep. 225, 2 So. 395; 1 Thomp. Neg. § 639.

BRUCE, J. (after stating the facts as above). There are but two questions for decision in this case: 1. Was the witness Kerr, who moved the machinery, an independent contractor? 2. Even if an independent contractor, was the moving of the engine in its then condition so intrinsically dangerous a transaction or guilty of such negligence in relation thereto that he would be liable for the losses occasioned thereby?

We are satisfied that the witness Kerr, who moved the engine, was an independent contractor. There was no right of control reserved by the defendant. Kerr hired and controlled his own men, and was free to haul or run the engine as he saw fit, and at any time and in any manner, provided that the work was done before October 20. 1 Thomp. Neg. §§ 622, 639; 26 Cyc. 1546; Leavitt v. Bangor & A. R. Co. 89 Me. 509, 36 L.R.A. 382, 36 Atl. 998, 1 Am. Neg. Rep. 605; Note to 65 L.R.A. 445; Shearm. & Redf. Neg. 5th ed. § 164.

Counsel for appellant, we know, relies upon the decision of this court in Ruehl v. Lidgerwood Rural Teleph. Co. 23 N. D. 6, — L.R.A. (N.S.) —, 135 N. W. 793, as tending to support a contrary rule. We do not, however, so interpret the opinion in that case. In it we did not place our decision upon the proposition that the man who dug the post holes might not possibly have been an independent contractor, but upon the theory that the telephone company had contracted to place a telephone in the house, and that a part of that undertaking was the implied contract to do the work in a reasonably safe way and with the exercise of such ordinary care that the occupants of the house would not be in danger. The liability in such cases would be the same whether the work was done by a servant or agent, or by an independent contractor. In the case at bar, however, the injury was not done to the second party to the contract, nor was the action brought by him. The action is based upon an injury done to an outsider merely, and the liability, if any, must be based upon a duty and obligation to that outsider which is not contractual in its origin.

But appellant insists that, under the holding in the Ruehl Case, a liability could be based upon the theory that the injury was occasioned by the subject of the contract, and that where the negligence or defect which occasioned the injury results directly from the acts which the contractor agrees, and is authorized, to do, the person who employs a contractor and authorizes him to do such acts is liable to the injured party. He cites in support of this proposition both the cases of Ruehl v. Lidgerwood Rural Teleph. Co. supra, and the cases of Whitney v. Clifford, 46 Wis. 138, 32 Am. Rep. 703, 49 N. W. 835; Robbins v. Chicago, 4 Wall. 675, 18 L. ed. 431; Ellis v. Sheffield Gas Consumers' Co. 2 El. & Bl. 769, 2 C. L. R. 249, 23 L. J. Q. B. N. S. 42, 18 Jur. 146, 2 Week. Rep. 19, 19 Eng. Rul. Cas. 180. The rule is, in the main, correctly stated by him; and it is no doubt the law that an owner of property can be held liable in damages in certain cases even where the work is intrusted to an independent contractor, and where the work ordered to be done or the structure ordered to be erected is, in itself, intrinsically dangerous or a nuisance. The origin and reason of this rule is the duty of due consideration which one in a civilized community owes to his fellows and to the public, and that such a duty precludes the ordering of that which, if done, will be inherently dangerous. These considerations are hardly applicable to the case at bar. It can hardly be said as a matter of law that the machine was a nuisance, or that the moving of it was an essentially dangerous transaction. City & Suburban R. Co. v. Moores, 80 Md. 348, 45 Am. St. Rep. 345, 30 Atl. 643; St. Louis, I. M. & S. R. Co. v. Yonley, 53 Ark. 503, 9 L.R.A. 604, 13 S. W. 333, 14 S. W. 800. Under the facts disclosed by the record, it was for the trial judge, who acted as a jury in this case, to decide these questions. It may also be the rule, as appellant suggests, that where a person contracts with an independent contractor for the performance of that which, in its nature, is dangerous unless due care is taken in the transaction, the principal will be liable for injuries which result from a lack of such care. Robbins v. Chicago, 4 Wall. 675, 18 L. ed. 431. The fact of this danger, however, is one primarily for the jury, and not for the court, or, where a jury is waived, for the trial judge. In such cases, also, there must be some measure of proof that the lack of care necessary to overcome the dangerous condition of the instrument or the dangerous character of

the work was a proximate cause of the injury. Whether the evidence would justify such an inference in this case was primarily a question for the trial judge to determine, and his finding in this respect must have the same effect and weight as the verdict of a jury. There is no such preponderance of evidence as would justify us in overruling his decision. There is no positive testimony, in fact, that any sparks came from the crack in the door at any time, or that the crack in the door had anything to do with the conflagration. The evidence, indeed, as far as it goes, shows that the crack was plastered with mud during the whole of the journey. There is, in fact, no positive evidence whatever as to the cause of the fire. There is, it is true, evidence that a year or so before the accident in controversy the engine occasioned several other fires, but as an offset to this there is evidence that at the end of the season the engine was in better condition than during the same, and that before the engine was moved the crack in the door was plastered up, and that new grates were placed in the fire box. There is, in fact, no direct testimony that the crack in the door, which is the only defect concerning which there is any positive evidence, had anything to do with the conflagration; and it is a matter of common knowledge that prairie fires are not only occasioned by defective machines, but by carelessness in operation, the dropping of matches, the scattering of ashes, and the pulling out of burning straw. It may possibly be that if the suit had been brought against the contractor the burden would have been upon him to afford some explanation for the fire under the peculiar circumstances of the case. There could hardly be such a burden, however, upon the defendant in this case. It may also be that if the finding of the trial court had been other than it was, we would not have interfered with it. We must, at any rate, give to the finding in this case the same weight and effect as if it had been the verdict of a jury.

The judgment of the County Court is affirmed.