FOREMOST INSURANCE COMPANY, a foreign corporation, Plaintiff and Appellee,

v.

ROLLOHOME CORPORATION, a foreign corporation, Defendant,

and

Intertherm, Inc., a foreign corporation, Defendant and Appellant.

Civ. No. 8997.

Supreme Court of North Dakota.

Aug. 30, 1974.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for plaintiff and appellee.

Wheeler, Wolf, Wefald & Durick, Bismarck, for defendant Rollohome Corp.

Wattam, Vogel, Vogel & Peterson, Fargo, for defendant and appellant.

VOGEL, Judge.

This is an appeal from a judgment in an action tried without a jury, in which the district court found in favor of the plaintiff insurance company, as subrogee of the rights of its insured, and against the defendant Intertherm, Inc. The trial court found in favor of the defendant Rollohome Corporation, and the ruling in its favor was not appealed.

Plaintiff's insureds, Mr. and Mrs. Daryl Wileman, purchased from Liechty Mobile Home Sales a mobile home manufactured by Rollohome Corporation. The Wilemans wanted central air conditioning installed, and Liechty purchased a central air-conditioning unit manufactured by Intertherm from a Frank Clark, doing business as Clark's Repair Service, a retailer in such products. At the request of Liechty, Clark installed the air-conditioning unit in the mobile home. It was subject to a warranty for one year. The installation required him to make modifications in the wiring within the main electrical fusebox of the mobile home in order to provide the additional electrical capacity needed to handle the electrical load of the air conditioner. Although he was not a licensed electrician, Mr. Clark rewired the fusebox to install a 220-volt circuit, and installed and wired a fuseholder for this circuit and installed 30-ampere screw-in type fuses in the holder.

The Wilemans soon complained that the air conditioner was not working. Clark investigated and found that one of the 30-ampere fuses in the air-conditioner circuit had blown. He replaced the fuse on several occasions and the Wilemans replaced fuses 15 to 20 times, and eventually Clark substituted new fuseholders containing 40-ampere cartridge fuses. The air conditioner still did not work properly. In early August 1970, Clark called the office of Intertherm at Wichita, Kansas, and spoke to an unidentified employee of Intertherm who advised Clark that the correct fuse for the air conditioner was a 40-ampere fusetron fuse. A fusetron fuse is so constructed as to allow an initial high surge of amperage to pass through the fuse for a short period of time. Clark advised the Intertherm employee that he had no 40-ampere fusetron fuses, and the agent replied that a 50-ampere regular fuse would be equivalent to a 40-ampere fusetron fuse. On August 25, 1970, Clark thereupon replaced the 40-ampere fuses on the air conditioner circuit with 50-ampere fuses. Later the same day, the Wilemans advised him that the air conditioner still was not cooling properly. Clark resolved to call the Intertherm factory again for assistance, but before he was able to do so a fire destroyed the Wileman mobile home, on August 26, 1970. The fire started in the steel fusebox. Plaintiff insurance company paid the Wilemans $10,250 for their property loss due to the fire and brought suit, as subrogor, against Rollohome and Intertherm, alleging strict liability in tort and negligence against Rollohome, and strict liability in tort and negligence of its agent, Frank Clark, against Intertherm.

The court made the following pertinent findings of fact and conclusions of law:

"3.

"That one Frank Clark is engaged on a part-time basis in the business of installing air conditioning units as an independent contractor and in the business of servicing air conditioning equipment under warranty from Defendant Intertherm, Inc. as the designated warranty service representative for Defendant Intertherm, Inc., . . .

"4.

"That Plaintiff issued and had in force and effect its policy No. 2376887

to Daryl Wileman and Judith Wileman of Jamestown, North Dakota, under which policy it afforded fire and extended coverage insurance on a certain mobile home owned by said parties and that on or about the 26th day of August, 1970, a fire caused extensive damage to the said mobile home and its contents, and that Plaintiff was obligated to pay Daryl Wileman and Judith Wileman the sum of $10,250.00 under the insurance policy in effect between the parties.

"5.

". . . that an air conditioner manufactured by the Defendant Intertherm, Inc. was installed in said trailer home by one Frank Clark of Jamestown, North Dakota in July, 1969 at the request and as an agent for Liechty Mobile Homes.

. . . . . .

"7.

"That following the installation of said air conditioner and immediately upon taking possession of said mobile home by the owner thereof, the air conditioner connections resulted in difficulties requiring the enlargement of the fusing system to the air conditioner, and that said difficulties were called to the attention of Frank Clark and Liechty Mobile Homes Sales in 1969; that in 1970 continuing difficulties with the electrical connections for the air conditioner were called to the attention of Frank Clark and Liechty Mobile Homes Sales by the owners of said mobile home and that the fusing system for said electrical connections to the air conditioner were increased by the said Frank Clark from 30 Amps. to 40 Amps. and finally on August 25, 1970 to 50 Amps., . . . but that the addition of the 50 Amp. fusing system was made by the said Frank Clark at the suggestion of representatives of Defendant Intertherm, Inc.

"8.

"That the said air conditioning unit required an electrical current surge upon starting in excess of the demand for current required by any other appliance located in said mobile home and in excess of the continuing current demand for which the electrical system in said unit were designed by the manufacturer; that continuing use of said air conditioner with said connections and increased fusing systems beyond the normal running current level for which said unit was designed caused a breakdown in the electrical installation in said unit and that said fire was somehow caused thereby.

"9.

"That Intertherm, Inc. and Frank Clark jointly and severally were responsible to Plaintiff for the installation of an article not inherently dangerous but which became dangerous when they failed to use due diligence to see it was fit for the purpose for which it was intended.

"CONCLUSIONS OF LAW

. . . . . .

"2. That the action of Intertherm, Inc., and its agent, Frank Clark, in making the electrical connections to the mobile home for the air conditioning unit and the overloading of said electrical system in the mobile home, and the addition of higher level fusing systems for the air conditioning unit after repeated complaints of electrical difficulties in said unit without engaging the services of a licensed electrician or without notifying the manufacturer of said mobile home, constituted an independent intervening cause, which cause was the proximate cause of the fire which resulted in the damages resulting therefrom.

. . . . . .

"4. The manufacturer of an article not inherently dangerous, but which may become dangerous when put to the use for which it is intended, owed the Plaintiff in this case the duty of employing care, skill and diligence to see that it was reasonably fit for the purpose for which it was intended."

There is much controversy as to whether Clark was at various times an agent of Liechty or of Intertherm, or whether he was an independent contractor. Evidence from which the trial court could conclude that he was an agent of Intertherm included the following: that he was a part-time vendor of Intertherm products as well as those of other manufacturers; that he was a warranty service agent for Intertherm products as well as the products of other manufacturers; that Intertherm issued to buyers of its air conditioners a brochure listing its authorized service agents, including Clark's Repair Service; that Clark made approximately 50 service calls a year in response to requests for warranty service for Intertherm products and billed Intertherm for warranty service work done on such service calls; that Intertherm required him to attend classes periodically to familiarize himself with methods of repair of Intertherm products; that Intertherm periodically sent him materials intended to keep him abreast of changes in product models; and, that when he ran into a problem with warranty service of Intertherm products, he was instructed to call the Intertherm representative at the factory in Wichita, Kansas, for assistance, and that he made such a call in this case.

Clark testified that he had never been authorized by Intertherm to replace fuses or install air conditioning as part of his warranty repair work.

Although the testimony of experts conflicted, the testimony of some of them tended to show that each of the two main fuses of the fusebox at the time of the fire were of 50-ampere capacity; that the fire started at a loose connection where the inlet wire into the fusebox connected with the clipholder for the main fuses; that the air conditioner was built to draw 20.8 amperes when running, but that the initial surge required to start the compressor of the air conditioner was approximately 100 amperes; that the initial surges of the air conditioner as it periodically cycled on caused the loose connection to break down; and that a proximate cause of the fire was the overfusing of the air conditioner circuit which allowed high surges of electrical current to break down the loose connection of the inlet terminal to the main fuse assembly.

■■■ The first issue raised by Intertherm on this appeal is whether the finding of the trial court that Clark acted as agent of Intertherm was clearly erroneous. We hold that the evidence outlined above, while conflicting, is sufficient to establish agency. The appellant asserts, correctly, that our cases require "clear and convincing evidence" of agency relationship, citing Tostenson v. Ihland, 147 N.W.2d 104 (N.D.1966); Vaux v. Hamilton, 103 N.W.2d 291 (N.D.1960); and Newman v. Sears, Roebuck & Co., 77 N.D. 466, 43 N.W.2d 411 (1950). We believe the trial court did not err in determining that the evidence meets the standard of these cases and in finding that Clark's apparent authority was broad enough to include the service calls he made and the substitution of heavier fuses.

It is true, as Intertherm asserts, that the trial judge found Clark to be the agent of Liechty in the installation of the air conditioner. However, the court also found that he was the warranty service representative of Intertherm, and found, implicitly, at least, that Clark, acting as the warranty service representative, was the agent of Intertherm in making the service calls at the Wileman residence. We believe this finding is justified by the evidence.

■■■ However, the result would not necessarily be different even if Clark were

deemed an independent contractor. While the general rule is that one who contracts with an independent contractor is not vicariously liable for the tortious acts of the independent contractor, as Prosser points out, this general rule is subject to so many exceptions that it has become merely a preamble to an enumeration of the exceptions. Prosser, Law of Torts, 4th Ed., p. 468, quoting Pacific Fire Insurance Co. v. Kenny Boiler & Manufacturing Co., 201 Minn. 500, 503, 277 N.W. 226 (1937).

Restatement of Torts 2d, Sections 410 to 429, lists 24 exceptions to the so-called general rule of nonliability of employers of independent contractors.

■ The Eighth Circuit Court of Appeals, construing North Dakota law, in Schultz & Lindsay Construction Co. v. Erickson, 352 F.2d 425, 435 (CA8 1965), noted that North Dakota has adopted at least one of the exceptions to the general rule:

"It is a fundamental principle of law, requiring no citation of authority, that an employer or contractee is not liable for the torts of an independent contractor. . . . However, the rule is not absolute. It affords no protection to the contractee for injuries caused by the failure of an independent contractor to exercise due care in the performance of work which is inherently or intrinsically dangerous. Restatement, Torts, 2d Ed. § 427; 27 Am.Jur., Independent Contractors, § 39. North Dakota recognized and applied the inherent danger doctrine in the early case of Ruehl v. Lidgerwood Rural Telephone Co., 23 N.D. 6, 135 N.W. 793, L.R.A. 1918C, 1063 (1912). The doctrine was also recognized in Taute v. J. I. Case Threshing Machine Co., 25 N.D. 102, 141 N.W. 134 (1913); and in the more recent case of Newman v. Sears, Roebuck & Co., 77 N.D. 466, 43 N.W.2d 411, 17 A.L.R.2d 694 (1950)."

The California Court of Appeal for the Fifth District took note of the general rule and its exceptions when it said, in Harold A. Newman Co., Inc. v. Nero, 31 Cal.App. 3d 490, 496, 107 Cal.Rptr. 464 (1973):

"It is true that an employer of an independent contractor is ordinarily not liable to third persons for losses attributable to the negligence of the independent contractor; . . . However, the rule is subject to numerous exceptions and has no application where a person, either by contract or law, owes an obligation to another; *a person who has assumed the contractual duty to perform a service for another cannot escape his contractual obligation to perform the service in a competent manner by delegating performance to another.*" [Emphasis supplied.]

The Supreme Court of Oklahoma, in Hudgens v. Cook Industries, Inc., 521 P.2d 813, 815 (Okl.1974), stated:

"Generally, an employer is not liable for the torts of an independent contractor, but there are many exceptions to the rule. The rule in Oklahoma is that a person who performs work through an independent contractor is not liable for damages to third persons caused by the negligence of the [independent] contractor except where the work is inherently dangerous or unlawful *or where the employer owes a contractual or defined legal duty to the injured party in the performance of the work.* Oklahoma City v. Caple, 187 Okl. 600, 105 P.2d 209, 212 (1940)." [Emphasis supplied.]

In Capitol Chevrolet v. Lawrence Warehouse Co., 227 F.2d 169, 173 (CA9 1955), the Ninth Circuit Court of Appeals stated:

"The second type of exceptions to the general rule stated [re nonliability of employers of independent contractors] is based upon contractual relationships. One who contracts to perform an undertaking is liable to his promisee for the negligence of an independent contractor to whom he delegates actual performance."

See also Dorkin v. American Express Co., 74 Misc.2d 673, 345 N.Y.S. 891; 41 Am. Jur.2d, Independent Contractors, § 37.

■ Particularly in view of the fact that the air conditioner could not function without electricity (and electricity is inherently dangerous), and in view of the contractual warranty undertaking of Intertherm, we find no error in the determination that the defendant Intertherm is jointly and severally liable for the acts of Clark.

The second claim of error is that the trial court's finding that an act or omission of either Intertherm or Clark was the proximate cause of the fire is clearly erroneous.

As we have indicated, there is expert evidence in the record to the effect that negligence of Clark and Intertherm proximately caused the fire and resulting damage. There also is evidence to the contrary, to the effect that the installation of the larger fuses could not have caused the fire at a point in the wiring preceding the fuses.

The finding of the trial court that overfusing of the air-conditioner circuit proximately caused the ensuing fire is supported by expert testimony to the effect that the overfusing allowed momentary surging of the high-amperage current whenever the air conditioner started operating, and such surging caused the loose connection at the inlet terminal of the fusebox to break down, resulting in temperatures high enough to melt the wiring and start the fire.

■ It is not our function to provide expertise on technical, nonlegal subjects nor to appraise the credibility of expert witnesses. We cannot say that the finding of the trial court was clearly erroneous.

■ The third issue presented for review by the appellant is whether the finding of the trial court that Intertherm was independently negligent is clearly erroneous. In view of the expert testimony on the issue of proximate cause, we believe the trial court had the right to conclude that the advice given by the employee of Intertherm, suggesting the use of 50-ampere fuses, was negligent and a proximate cause of the fire. And since we have concluded that Intertherm is liable for Clark's acts, a finding of independent negligence, or lack of it, would not alter the result.

The fourth claim of the appellant is that the trial court decided the case on the theory of liability which was not pleaded by the plaintiff and which never was incorporated into the pleadings by amendment. In support of this allegation, Intertherm points out that the trial court found, in paragraph 8 of its findings, that Intertherm and Clark were jointly and severally responsible to the plaintiff. Clark, of course, was not named as a defendant. The finding that he was jointly and severally responsible with Intertherm is, of course, beyond the issues. Whether Intertherm itself, without reference to the agency relationship with Clark, would be liable is a question we need not decide, since we have determined that it is liable, both on the ground of its principal-and-agent relationship with Clark and the nondelegable nature of the duties imposed upon Clark, even as an independent contractor.

Affirmed.

ERICKSTAD, C. J., and KNUDSON, PAULSON and JOHNSON, JJ., concur.