Carole FETTIG and Harvey Fettig,
Plaintiffs and Appellants,

v.

Frank WHITMAN, Whitman's Inc., a
corporation, and Richard Sturn,
Defendants and Appellees.

Civ. No. 9558.

Supreme Court of North Dakota.

June 18, 1979.

As Corrected on Denial of Rehearings
July 13 and Aug. 22, 1979.

Rehearing Denied Sept. 26, 1979.

Chapman & Chapman, Bismarck, and Christensen & Thompson, Bismarck, for plaintiffs and appellants; argued by Daniel J. Chapman and Maury C. Thompson, Bismarck.

Wheeler, Wolf, Wefald & Peterson, Bismarck, for defendants and appellees; argued by David L. Peterson, Bismarck.

SAND, Justice.

Carole Fettig was seriously injured as the result of a fall through an open stairwell in a house being constructed for her and her husband. The district court, following the submission of evidence by the parties at trial, entered an order dismissing the general contractor from the subsequent action brought by the Fettigs. The Fettigs appealed from the order of dismissal asserting the general contractor was vicariously liable for the negligence of the carpenter it employed to build the house. We affirm.

On 10 September 1971, Harvey Fettig entered into a contract with Frank Whitman, d. b. a. Whitman's, Inc., for the construction of a house. Under the terms of the contract, Whitman's was to furnish the materials and labor for the house except for the "insulating, taping, texturing, painting and staining" which was to be performed by Fettig. Whitman's subcontracted the electrical and plumbing work for the house and hired Richard Sturn to perform the necessary carpentry work.

Soon after Sturn began work on the house, he and Harvey Fettig reached a verbal agreement whereby Harvey would assist Sturn in the construction of the house and Sturn would help Fettig with the taping and other finish work Fettig was responsible for under the contract. Although Harvey's wife, Carole, was not included in this work agreement, she periodically pro-

vided general assistance to her husband and Sturn.

At the time of the accident, the house was basically framed and sheathed. The subfloor of the house was in place and the studdings for at least some of the inside walls were also in place. During the course of laying the subfloor, a hole between the main floor of the house and the unfinished basement below was left open to serve as a stairwell. The stairway itself was not in place at the time of the accident, and the distance between the main floor and the floor of the basement was approximately 8 or 9 feet. Prior to the accident, this stairwell opening was covered with lumber, however, testimony at trial indicated that on the day of the accident the lumber covering the hole was removed and used in the construction project.

On the day of the accident, 11 November 1971, at approximately 6:00 o'clock p. m., Carole Fettig walked to the construction site to summon the two men to dinner. When Carole arrived at the site, Sturn suggested that if the three of them worked a short while longer they could finish putting in a window. Although testimony at trial differed as to exactly how dark it was at this time, the evidence was undisputed that it was no longer daylight and the only artificial lighting came from a trouble light laying on the floor in a corner of the house.

While putting the window in place, either Fettig or Sturn requested Carole to get a stepladder which was laying at the other end of the house. Carole walked to the ladder, picked it up, and was on her way back to where the men were working when she accidentally stepped into the stairwell opening. She was not aware the stairwell had been uncovered. As a result of her fall, Carole was seriously injured.

1. One week prior to the start of trial, a motion was made seeking the dismissal of Frank Whitman individually. This motion was granted by an order dated 23 June 1978 and was not challenged on this appeal.

2. The motion granted in favor of Whitman's pursuant to Rule 50(a), NDRCivP, and designated as an order for dismissal was more ap-

An action was started by the Fettigs against Sturn, Whitman's, Inc., and Frank Whitman, individually,[1] by a summons and complaint filed 6 August 1973. Following the submission of evidence by the parties, but before the case was submitted to the jury, the trial court granted a motion[2] to dismiss Whitman's on the ground Whitman's was not liable for an injury resulting from the negligence of its independent contractor, Sturn. An agreement was then reached whereby Sturn was dismissed from the action and the Fettigs retained their right to appeal from the motion dismissing Whitman's. A formal written order dismissing Whitman's was filed 13 June 1978, from which Fettigs appealed.

Fettigs argued the question of whether or not Sturn was an employee or an independent contractor of Whitman's was a question of fact for determination by the jury.

In almost any given situation, the question whether one is an employee or an independent contractor depends largely upon the facts and circumstances of the transaction and the context in which they must be considered. Ordinarily a question of fact for the jury, the determination of whether or not one is an independent contractor, becomes a question of law when the facts are undisputed and only one inference can reasonably be drawn therefrom. *Slope County Board of County Commissioners v. Consolidation Coal Co.*, 277 N.W.2d 124 (N.D.1979); *La Bree v. Dakota Tractor & Equipment Co.*, 69 N.D. 561, 288 N.W. 476 (1939).

This court has stated:

  " 'One of the most important tests to be applied in determining whether a person who is doing work for another is an employee or an independent contractor is

propriately termed a directed verdict. For purposes of reviewing the evidence presented in this case, however, the name given the order is unimportant. Under either order, the evidence is considered in the light most favorable to the party against whom the motion is made. *Thompson v. Nettum*, 163 N.W.2d 91 (N.D. 1968).

whether the person for whom the work is done has the right to control, not merely the result, but the manner in which the work is done, as well as the method used.' *Janneck v. Workmen's Compensation Bureau,* 67 N.D. 303, 272 N.W. 188, 189. See also *Bernardy v. Beals,* 75 N.D. 377, 28 N.W.2d 374 and cases cited." *Newman v. Sears, Roebuck & Co.,* 77 N.D. 466, 43 N.W.2d 411, 414 (1950).

In applying the above rule of law to the facts in this case, we find particularly relevant a statement of this court in *Starkenberg v. North Dakota Workmen's Compensation Bureau,* 73 N.D. 234, 13 N.W.2d 395 (1944), wherein we said at paragraph 2 of the syllabus:

"One who contracts to construct a building for another, in accord with a stipulated plan, without being subject to the latter's superintendence, orders, or control in respect of the details of the work; who has absolute control of the work, may work such hours as he sees fit to work, may do the work himself or employ others to assist, and is to be paid a definite, stipulated sum when the building has been fully completed, is not an employee but is an independent contractor."

The facts before us are nearly identical to the situation described in *Starkenberg.* In this case Sturn was hired for a stipulated sum to complete the construction of the building according to an agreed-upon plan. The record indicates Sturn was in control with respect to the details of the work and also that he worked the days and hours he saw fit. Although evidence was introduced that on one occasion Whitman's requested Sturn to work on another project instead of the Fettig residence, such activity does not go to the details of the contracted work. A general contractor is allowed to place priorities on the different work he contracts to an independent contractor. Such priority placing does not, in itself, make the independent contractor an employee.

The strongest factor in determining the status of Sturn as an independent contractor was the work agreement he had with Harvey Fettig. Generally when one enters into a relationship of independent contractor, he has the right to choose his own employees and servants to carry on the work, being responsible to the contractor only to produce the results according to the contract. *LaBree v. Dakota Tractor & Equipment Co., supra* at 481. The work agreement between Sturn and Harvey Fettig did not involve or depend upon the approval of Whitman's. Sturn testified at trial that if he had not entered into the agreement with Fettig, he would have had to hire someone to assist him. This arrangement whereby Sturn agreed to do work not in his original contract with Whitman's in exchange for Fettig's assistance, demonstrates the status of Sturn as an independent contractor. We conclude reasonable men could not differ as to the inference to be drawn from the facts and thus the issue of Sturn's status as an independent contractor was properly removed from the jury.[3]

The Fettigs contended that even if Sturn is considered an independent contractor, Whitman's is vicariously liable for Sturn's negligence. As authority, Fettig cited the decision of *Ruehl v. Lidgerwood Rural Telephone Co.,* 23 N.D. 6, 135 N.W. 793, 795–796 (1912), in which this court stated the rule "that where, in the making of an improvement of any kind, it is manifest that injury is likely to result, unless due precautions are taken, a duty rests upon him who causes

---

**3.** It could be argued that it would have been the better practice on the part of the trial court to have submitted the issues in this case to the jury. The trial court could have subsequently granted a motion for judgment notwithstanding the verdict if the jury's verdict was not in accordance with what the trial court concluded were facts as a matter of law. Although such a practice may have eliminated the necessity of an appeal in this case, or if in the case of a remand, the necessity for a new trial, the trial court in this case acted within its discretion in directing the verdict where it found the facts to exist as a matter of law.

the work to be done to see that all necessary precautions are taken." This is in effect an exception to the general rule that an employer is not liable for the torts of his independent contractor. See *Foremost Insurance Co. v. Rollohome Corp.,* 221 N.W.2d 722 (N.D.1974); *Schultz & Lindsay Construction Co. v. Erickson,* 352 F.2d 425, 436 (8th Cir. 1965); *Newman v. Sears, Roebuck & Co., supra; Taute v. J. I. Case Threshing Machine Co.,* 25 N.D. 102, 141 N.W. 134 (1913). See also, Restatement of Torts 2d, §§ 413, 416, 427; Annot., 23 A.L.R. 1016; Annot., 23 A.L.R. 1084; 41 Am.Jur.2d *Independent Contractors* §§ 40, 41, 43.

The trial court, in granting the motion to dismiss Whitman's, stated the above exception to the general rule as set out in *Ruehl* but concluded it was not applicable in this case.

The exception that the employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and cannot shift to the contractor the responsibilities for such dangers, or for taking precautions against them, actually encompasses two separate rules which are often not distinguished. The first of these is commonly referred to as the "inherently dangerous" exception and is set forth at § 427 of the Restatement of Torts, 2d:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

Construction of a building (house) is not, in the usual instance, considered work of an inherently or intrinsically dangerous character as to bring into operation the exception defined in § 427. See *Cutlip v. Lucky Stores, Inc.,* 22 Md.App. 673, 325 A.2d 432 (1974); *Evans v. Elliott,* 220 N.C. 253, 17 S.E.2d 125 (1941); *Allen v. Republic Building Co.,* 84 S.W.2d 506 (Tex.Civ.App.1935); *Amann v. City of Tacoma,* 170 Wash. 296, 16 P.2d 601 (1932); 41 Am.Jur.2d, Independent Contractors, § 43; 57 C.J.S. Master and Servant § 590b. The Fettigs have not shown, nor have they contended, that special circumstances existed in this case as to make the building of their house inherently or intrinsically dangerous. Rather, they rely on the applicability of the related exception to the general rule set forth in § 416 of the Restatement of Torts, 2d:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

See also, 41 Am.Jur.2d, Independent Contractors, § 40.[4]

■ In determining if the "special precautions" exception is applicable to a partic-

---

4. If a distinction can be made between the two exceptions it is that the "special precautions" exception more appropriately applies where, from the nature of the work, the employer should anticipate the need for some special precaution, while the "inherently dangerous" exception applies where the danger involved in the work calls for a whole set of precautions, against a number of hazards. Comment *a* of the Reporter's Notes to § 416 of the Second Restatement distinguished the exceptions by stating:

"The rule stated in this Section is more commonly stated and applied where the employer should anticipate the need for some special precaution, such as a railing around an excavation in the sidewalk. The rule stated in 427 is more commonly applied where the danger involved in the work calls for a number of precautions, or involves a number of possible hazards, as in the case of blasting, or painting carried on upon a scaffold above the highway."

ular fact situation, emphasis must be placed upon the "peculiar" character of the risk, and the need for special, unusual care. *Snider v. Northern States Power Co.,* 81 Wis.2d 224, 260 N.W.2d 260 (1977); *Holman v. State,* 53 Cal.App.3d 317, 124 Cal.Rptr. 773 (1975); *West v. Guy F. Atkinson Construction Co.,* 251 Cal.App.2d 296, 59 Cal.Rptr. 286 (1967). The comments to § 416 of the Second Restatement state that comment *b* to § 413 of the Restatement is applicable to the former section in defining both "peculiar risk" and "special precautions." Comment *b* to § 413 reads, in pertinent part:

"It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result. . . This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is *not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work.* Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful . . . he is not required to provide . . . that the contractor shall take them.

*"This Section is concerned with special risks,* peculiar to the work to be done, and rising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions."

[Emphasis supplied.] Restatement of Torts, 2d § 413, comment *b.*

■ The concept of "peculiar risk," therefore, does not include the negligence of the contractor "in the performance of operative details of the work which ordinarily may be expected to be carried out with proper care, unless the circumstances under which the work is done give him warning of some special reason to take precautions, or some special risk of harm to others inherent in the work." Restatement of Torts, 2d § 426, comment *b.* For such collateral negligence, only the independent contractor is liable. *Smith v. Inter-County Telephone Co.,* 559 S.W.2d 518 (Mo.1977); *May v. 11½ East 49th Street Co.,* 269 App.Div. 180, 54 N.Y.S.2d 860 (1945), *affirmed* 296 N.Y. 599, 68 N.E.2d 881.

■ In this case the independent contractor failed to cover an opening he created during the course of constructing the house. The uncovered opening naturally presented a danger to not only persons unfamiliar with the premises, but also those familiar with it. Such dangers are incident to any building project, however, and routine precautions to protect persons from them can reasonably be expected from the contractor. The Fettigs have failed to show any circumstances under which the work was done that would have given Whitman's warning of some special reason to guard against this particular act of negligence. If we held under the facts of this case that failure to keep the stairwell covered at all times until the permanent structures were in place constituted a " 'peculiar risk' within the meaning of Restatement section 416, it would be tantamount to holding that any 'general anticipation of the possibility that the contractor may in some way be negligent' would result in vicarious liability, directly contrary to the expressed intention of section 416." *Addison v. Eagle Lake Lumber Co.,* 47 Cal.App.3d 394, 120 Cal.Rptr. 737, 741–742 (1975). The negligence of Sturn in not keeping the stairwell opening covered was not a danger which arises from the very performance of constructing a house but was from the manner in which the construction was done and

thus not within the exception of § 416 of the Restatement. Consequently, under the facts of this case, the general rule controls and Whitman's is not liable for the negligence of its independent contractor, Sturn.

■ A number of social policy arguments can be advanced for the extension of the "special precautions" exception to the facts in this case. The project, notwithstanding the employment of an independent contractor, remains the employer's as he has directed the work to be done and is the one who primarily benefits from it. The employer selects the contractor and is free to select a responsible party, both financially and professionally and thus has more control over the contractor and how the work is performed than does the injured party. The employer has the right of indemnity against that actively negligent contractor and it can be argued that the insurance necessary to distribute the risk is properly a cost of the employer's business. In addition, one questions if an employer should be able to insulate himself from liability for the negligent performance of his project by the mere manner in which he contracts for his labor. See *Van Arsdale v. Hollinger*, 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 (1968); *Majestic Realty Associates, Inc. v. Toti Contracting Co.*, 30 N.J. 425, 153 A.2d 321 (1959).

No doubt, performance of a project in a non-negligent manner is of great importance to the public, and perhaps in the view of those supporting so-called distributive justice, extension of the exception is justified by the concept that a loss arising from the negligent conduct of a financially irresponsible contractor should fall on the employer rather than on the innocent injured party. We conclude, however, that these significant policy considerations are counterbalanced by the principle that in the performance of the operative details of a project, an employer should not be compelled to answer for the fault or negligence of another over whom he has no control and that the employer has the right to rely on the presumption that the contractor will perform his work in a manner as to discharge his legal duties owing to his employ-

ers and third persons. *Harold A. Newman Co., Inc. v. Nero*, 31 Cal.App.3d 490, 107 Cal.Rptr. 464 (1975).

Even if we accepted the argument that under the facts of this case Whitman's could be subjected to liability for the negligence of its independent contractor in failing to take due precautions, there must be some measure of proof that the lack of care necessary to overcome the dangerous condition was a proximate cause of the injury. *Taute v. J. I. Case Threshing Machine Co.*, 25 N.D. 102, 141 N.W. 134 (1913). Courts have held that where the negligence charged furnishes only a condition by which injury is made possible, and a subsequent independent act of a third person causes the injury, the existence of the condition is not the proximate cause of the injury. *Weichel v. Lujka*, 185 Neb. 819, 179 N.W.2d 112 (1970); *Connolley v. Omaha Public Power District*, 185 Neb. 501, 177 N.W.2d 492 (1970). See *Lock v. Packard Flying Service, Inc.*, 185 Neb. 71, 173 N.W.2d 516, 41 A.L.R.3d 1313 (1970); *Medved v. Doolittle*, 220 Minn. 352, 19 N.W.2d 788 (1945): overruled on other grounds, *Strobel v. Chicago, Rock Island and Pacific Railroad Co.*, 255 Minn. 201, 96 N.W.2d 195 (1959); *Kline v. Moyer*, 325 Pa. 357, 191 A. 43, 111 A.L.R. 406 (1957).

In this case, testimony indicated that either Sturn or Harvey Fettig sent Carole on her mission to get the stepladder. Not only were Fettig and Sturn aware the lumber covering the stairwell had been removed, both had been instrumental in its removal, yet neither issued a warning of the dangerous condition to Carole. It could be argued that the subsequent negligent acts of Sturn and Harvey Fettig in sending Carole into an unlit area without giving warning of the peculiar danger of which they were aware, was active negligence constituting the proximate cause of Carole's injuries and superseding the vicarious and passive negligence of Whitman's arising by virtue of the acts of its independent contractor. Because this issue, however, was neither raised at trial nor preserved on appeal, and because we have concluded Whitman's, Inc. is not

vicariously liable for the negligence of its independent contractor in this case, we do not reach the issue of proximate cause.

■ Finally, the Fettigs contended that one who has assumed a contractual duty to perform a service for another cannot escape his contractual obligation to perform the service in a competent manner by delegating performance to a third party.[5] *Foremost Insurance Co. v. Rollohome Corp., supra.* Harvey Fettig was the only Fettig who signed the contract with Whitman's; thus was the only Fettig to whom Whitman's owed a contractual duty; and consequently the only Fettig to whom Whitman's could be held liable under this latter argument. The injuries suffered by Harvey Fettig were based upon and resulted from those injuries suffered by his wife. Under the facts of this case, where the act of negligence of Harvey caused or contributed to the cause of his wife's injuries, and where Harvey's damages were based upon and resulted from the injuries suffered by his wife for which Whitman's was not liable, the failure to fulfill any contractual duty to perform the work in a competent manner was not the cause of the injuries suffered. The exception cited by the Fettigs was not intended to apply in such situations.

The order of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

---

5. If this concept or argument were extended and applied fully to this case, Fettig, the owner (contractee) for whom the house was built could conceivably be held liable for the injuries sustained by Carole, a third party to the contract.