Virginia and Wencil PETERSON, Plaintiffs and Appellants,

v.

The CITY OF GOLDEN VALLEY, NORTH DAKOTA, a municipal corporation, and Interstate Engineering, Defendants and Appellees.

Civ. No. 9951.

Supreme Court of North Dakota.

July 15, 1981.

As Modified on Denial of Rehearing Sept. 3, 1981.

---

1. See Rule 52(a), NDRCivP.

 

Freed, Dynes, Malloy & Reichert, Dickinson, for plaintiffs and appellants; argued by George T. Dynes, Dickinson.

Pearce, Anderson & Durick, Bismarck, for City of Golden Valley; argued by B. Timothy Durick, Bismarck.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, and Briggs & Morgan, St. Paul, Minn., for Interstate Engineering; argued by Paul G. Kloster, Dickinson.

PEDERSON, Justice.

The Petersons appeal from an adverse summary judgment in an action for the wrongful death of their son, Dale Peterson. We affirm.

On May 29, 1979, the City of Golden Valley awarded a sewer construction contract to Les Voltz for a project known as Sewer Improvement District No. 2. One of Voltz's employees was 17-year-old Dale Peterson. Peterson was killed on the project when the banks of a trench in which he was working caved in. The portion of the trench where the collapse occurred was not braced or flared outward. A protective device called a "cage," which allows workers to enter the trench without risk of injury from a cave-in, was available at the site but was not being used at the time of the accident.

Interstate Engineering was employed by the City to provide the engineering services necessary for Sewer Improvement District No. 2. The parties do not dispute that Interstate, like Voltz, was an independent contractor for the City.

Some pertinent terms of the contract between Voltz and the City were as follows:

"Section 105–10. Owner Assumes No General Liability: It is expressly agreed and understood that the Owner assumes and incurs no general liability under the contract for the payment of any compensation to the Contractor, or any other person; the Owner's obligation hereunder being limited solely to the administration and application of the funds ... in accordance with the law, and the provisions of this Agreement."

"Section 210–3.

.     .     .     .     .

"The CONTRACTOR shall give all notices and comply with all laws, ordinances, rules and regulations bearing on the conduct of the WORK as drawn and specified."

"Section 211–1. The CONTRACTOR will be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the WORK. He will take all necessary precautions for the safety of, and will provide the necessary protection to prevent damage, injury or loss to all employees on the WORK and other persons who may be affected thereby ..."

"Section 211–2. The CONTRACTOR will comply with all applicable laws, ordinances, rules, regulations and orders of any public body having jurisdiction. He will erect and maintain as required by the conditions and progress of the WORK, all necessary safeguards for safety and protection.... The CONTRACTOR will remedy all damage, injury or loss to any property caused, directly or indirectly, in all or in part, by the CONTRACTOR, any SUBCONTRACTOR or anyone directly or indirectly employed by any of them or anyone for whose acts any of them be liable ..."

"Section 211–3. In emergencies affecting the safety of persons or the WORK or property at the site or adjacent thereto, the CONTRACTOR, without special instruction or authorization from the ENGINEER or OWNER, shall act to prevent threatened damage, injury, or loss."

"Section 212–1. The CONTRACTOR will supervise and direct the WORK. He will be solely responsible for the means, methods, techniques, sequences and procedures of construction."

"Section 227–3. The ENGINEER will not be responsible for the construction means, controls, techniques, sequences, procedures, or construction safety.

"Section 401–3.2. *EXCAVATION AND TRENCH PREPARATION.* The trench shall be excavated to the alignment and depth required and only as far in advance of pipe laying as the Engineer will permit. The trench shall be braced and drained so that workmen may work there safely and efficiently."

The Petersons maintain that, in spite of these apparent attempts to delegate to Voltz the duty of insuring project safety, the City's responsibility to their son continued. The challenge to the summary judgment is premised on the conclusion that the district court erred in not recognizing a duty on the part of the City and Interstate Engineering. Material fact issues, as such, do not exist. The question is whether the appellees are entitled to judgment as a matter of law.

■ Our attention is directed to §§ 416 and 427 of Restatement of Torts, 2d. These provisions represent exceptions to the general rule insulating employers from liability for the acts or omissions of independent contractors. See, *Newman v. Sears Roebuck and Co.*, 77 N.D. 466, 43 N.W.2d 411, 414 (1950).

"Section 416. Work Dangerous in Absence of Special Precautions. One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

"Section 427. Negligence as to Danger Inherent in the Work. One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

An employer's duty based on these provisions is not delegable to the contractor. Comment c, § 416; Comment a, § 427. An employer, then, can be found vicariously liable for the acts of his independent contractor's employees if the work from which the injury results fits within either § 416 or § 427.

■ The district court in granting summary judgment against the Petersons held that the excavation of a sewer trench presents neither an inherent danger nor a peculiar risk. The Petersons argue that whether or not an activity is inherently dangerous or peculiarly risky is a fact question properly left to the jury. They believe the court erred in treating the applicability of these exceptions as issues of law.

■ A determination that an exception to the general rule of employer non-liability applies in a given case is tantamount to a determination that the employer in that case has a duty. Whether or not one owes a duty to another in a case such as this is an issue of law which the court must resolve before allowing a jury to hear evidence of negligence and proximate cause. See, Prosser, Law of Torts 14th ed.) § 37, p. 206. Circumstances readily distinguished cases like *Kirton v. Williams Elec. Co-op, Inc.*, 265 N.W.2d 702 (N.D.1978), where factual determinations are prerequisite to establishing duty. We reject the assertion that the court's handling of the matter was improper.

■ A separate question is whether the court was correct in its decision that the digging of a sewer trench does not come within §§ 416 and 427. Our opinion in *Fettig v. Whitman*, 285 N.W.2d 517 (N.D. 1979), features a discussion of both exceptions. In *Fettig* we analyzed the scope of § 416 by referring to Comment b under § 413 of the Restatement. See, Comment b, § 416. Quoting from Comment b of § 413 we said:

"It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result.... This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is *not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor ...."* *Fettig v. Whitman, supra*, 285 N.W.2d at 522. [Emphasis in *Fettig.*]

The risk, in short, must be "likely to arise in the course of the ordinary and usual method of doing the work ...." Comment e, § 416.[1]

An analysis of § 427 yields a like conclusion. According to Comment b under that provision, the danger is sufficient to make the employer liable if it is "normally to be expected in the ordinary course of the usual or prescribed way of doing [the work] ...." Section 427 "has no application where the negligence of the contractor creates a new risk, not inherent in the work itself or in the ordinary or prescribed way of doing it ..." Comment d, § 427. We made the same point in *Newman, supra*, 43 N.W.2d at 412. Paragraph two of the court's syllabus reads:

"If ... the nature of the work for which the independent contractor is employed is such that the work *when finished in the ordinary manner* is inherently dangerous or a nuisance per se then the employer would be liable if the necessary precautions to protect the public are not taken." [Emphasis added.]

The question, then, under both § 416 and § 427,[2] is whether trenching of the type

1. Prosser states the risk is peculiar and sufficient for employer liability if "the *usual or contemplated methods of doing the work* are likely to lead to such a special risk ...." [Emphasis added.] Prosser, Law of Torts, 4th Ed., § 71, p. 473–4.

2. See, Comment a, § 416, which states: "The two rules [§§ 416 and 427] represent different forms of statement of the same general rule ...."

involved here carries a largely intrinsic risk or danger to workers when done in an ordinary and reasonable manner.[3] We conclude it does not.

Voltz failed to take routine precautions during the excavation. In his deposition he stated that the trench depth where Peterson died was about six feet, four inches. He put the trench's width at about three feet across the bottom and four feet across the top. Laverne Eckert, an employee of the Occupational Safety and Health Administration, United States Department of Labor, inspected the site a few days after the accident. According to his deposition, the sandy nature of the soil would have required the trench to have a "two-to-one" slope. The top of the trench should therefore have been at least approximately 15 feet across (double the depth plus the width of the bottom) if we accept Voltz's testimony.[4] Eckert stated that OSHA regulations call for sloping, bracing or the use of a trench box (a "cage") whenever a trench exceeds five feet in depth.

Eckert concluded his deposition by saying that the trench in question, dug as it was by Voltz in disregard of OSHA regulations, was inherently dangerous to workers inside the trench. The record also contains an affidavit by one Wardie King, "a certified safety professional," stating that "any sewer trenching project of this nature" is inherently dangerous, and adding that "proper practice would have dictated shoring the trench, flaring it out to a gradual slope or utilizing other protective devices."

■ From this we can infer that the risk to Peterson was not inherent in or peculiar to the typical excavation of a trench but arises out of the failure to use proper protective practices. This type of excavation, when done with standard precautions, presents no extraordinary risk of caving in. *Cummings v. Hoosier Marine Properties, Inc.*, 363 N.E.2d 1266, 1275 (Ind.App.1977). In the context of a trenching project, guarding against the danger of cave-ins would appear to be one of the "operative details of the work which ordinarily may be expected to be carried out with proper care." *Fettig, supra*, at 522, quoting Comment b, § 426, Restatement of Torts, 2d. We hold, therefore, that the City had no duty under the inherent danger or peculiar risk exception to the non-liability rule.

The parties have briefed this court on the question of whether or not the word "others," as used in §§ 416 and 427, includes employees of the independent contractor. In view of our discussion thus far, we deem it unnecessary to decide that question.

The Petersons assert that the appellees had a duty independent of the above-stated exceptions. They contend "the engineer did exercise authority over the contractor and the manner and details in which the work was done." This is an appeal to a well-known exception to the non-liability rule: an employer is liable for an independent contractor's acts on a job over which he has retained control.[5] The employer can be found liable, not vicariously for the acts of his contractor's employees, but directly because of his retention of control over the work. The applicability of this exception is again a question of duty, and thus of law.

We note first the contract provisions quoted near the beginning of this opinion. These represent at the least an attempt by the City to make Voltz responsible for safe-

---

3. Both § 416 and § 427 allow for employer liability in cases of a particular risk or danger not necessarily intrinsic in the work per se. Where he has some reason to *know* the contractor will do the work in a less than careful manner, the employer may be liable, irrespective of whether or not the work presents a peculiar risk or inherent danger. See, Comment e, § 416; Comments b and d, § 427; see also, § 426(c). The Petersons have not alleged the appellees suspected Voltz would act imprudently and we do not reach that question.

4. From his investigation Eckert believed the trench had a depth of about seven feet. This would require the top to have been about 17 feet wide.

5. "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Section 414, Restatement of Torts, 2d.

ty measures necessary to the project. The Petersons assert, however, the City through its employee, Interstate Engineering, had authority to control "the manner and details" of the work done by Voltz. This assertion finds no support in the record. The contract between the City and Voltz did allow the City and its engineer to inspect the work, to order changes in plan details, and to suspend work not in compliance with the contract. Yet these provisions did not shift control over the method of construction to the appellees; they were simply meant to guarantee that the final product was in accord with the engineer's plans.

The Petersons argue that the frequent, almost daily, presence of Interstate's employees on the site, indicates a sufficient amount of actual control to fit within the exception. Whether or not the engineers exercised control over the project is a question answered in the negative by Voltz himself. The following exchange is taken from his deposition:

"Q. Now, excepting for the information and the specifications requiring certain types of materials, and the like, all of the things that are provided in that contract, you were left to your own discretion as to how to do the work?

"A. Right.

"Q. And as to selecting your own pace of completing the work within the framework that it did have a final end date for completion?

"A. Right.

"Q. The methods of work that you might employ were left to your discretion?

"A. Right.

"Q. And the equipment which you might use was left to your discretion?

"A. Right."

This testimony, when considered along with the express words of delegation in the contract, is conclusive evidence that Voltz had control over the matters relevant here.

The summary judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.