MR. CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
This is an appeal from District Court’s granting of summary judgment in favor of defendants in a personal injury case. Christian, Spring, Sielbach & Associates (Christian) have litigated this matter separate from the other defendants. Bechtel Construction Company was dismissed from the lawsuit by stipulation. Bechtel Power Corporation, Montana Power Company, Puget Sound Power and Light Company, Portland General Electric Company, Washington Water Power Company and Pacific Power and Light Company have litigated this matter together as one party which will be referred to collectively as “companies” except where the individual dealings of the entities are important.
We affirm the District Court on all issues.
The significant issue involving the companies is whether the companies, as general contractor and owner, had a nondelegable or reserved duty rendering them liable to an employee of a subcontractor. The issue we considered involving Christian is whether Christian’s status as project engineer encompassed a duty of safety to the other subcontractors. If there was no duty owed or breached, there can be no issues of material fact and granting of summary judgment was appropriate. Rennick v. Hoover (1980), 186 Mont. 167, 170, 606 P.2d 1079, 1081; see also Scott v. Robson (1979), 182 Mont. 528, 597 P.2d 1150.
The relevant facts concern the contractual arrangement of parties on a construction project and the details of a trenching accident. The contractual arrangements are prescribed by Bechtel’s contract *522 with Montana Power Company (MPC), Christian’s contract with MPC, and COP Construction Company’s (COP) contract with Bechtel. Bechtel contracted with MPC for development and expansion of a townsite on some of MPC’s property at Colstrip, Montana. Christian was employed by MPC as project engineer. COP subsequently subcontracted with Bechtel for work which included putting in a sewer line for the townsite.
No provision in the contract between MPC and Bechtel addresses safety. Section GC-25 of COP’s contract with Bechtel sets out these parties’ safety duties:
“GC-25 SAFETY
“Subcontractor shall at all times conduct all operations under the Subcontract in a manner to avoid the risk of bodily harm to persons or risk of damage to any property. Subcontractor shall promptly take all precautions which are necessary and adequate against any conditions which involve a risk of bodily harm to persons or a risk of damage to any property. Subcontractor shall continuously inspect all work, materials and equipment to discover and determine any such conditions and shall be solely responsible for discovery, determination and correction of any such conditions.
“Contractor will establish a Project Safety Program. Subcontractor shall comply with all applicable laws, regulations and standards and the Project Safety Program. Subcontractor shall coordinate with other subcontractors on safety matters and shall promptly comply with any specific safety instructions or directions given to Subcontractor by Contractor. Subcontractor shall submit written Safety Program, with detail commensurate with the work to be performed, for Contractor’s review. Such review and approval shall not relieve Subcontractor of its responsibility for Safety, nor shall such approval be construed as limiting in any manner Subcontractor’s obligation to undertake any action which may be necessary or required to establish and maintain safe working conditions at the site. Subcontractor shall appoint a qualified Safety Representative who, unless otherwise provided herein, shall have no other duties. Such Safety Representative shall attend all project Safety meetings and participate fully in all activities outlined in the Project Safety Program.
“Subcontractor shall maintain accurate accident and injury reports and shall furnish Contractor a monthly summary of injuries and man-hours lost due to injuries.
“Subcontractor shall hold regular scheduled meetings to instruct *523 its personnel on Safety practices and the requirements of the Project Safety Program. Subcontractor shall furnish Safety equipment and enforce the use of such equipment by its employees.”
Provisions 2.h and 2.i in the contract between Christian and Bechtel set out Christian’s responsibilities during the construction phase of the project:
“(2.h.) surveying and staking of construction layout; and
“(2.i) administration, coordination, observation and inspection of construction for the purposes of quality assurance and cost monitoring with the obligation of promptly informing the Owner [MPC] of all failures on the part of construction contractors to perform work in accordance with applicable plans and specifications or to accomplish work in accordance with contract schedules, as well as informing the Owner of apparent conflicts or omissions in the plans and specifications as they are discovered in the course of a contractor’s work.”
No provision in this contract addresses safety.
Plaintiff was employed by COP as a laborer at the Colstrip project on November 21, 1979. He was working with Ron Nikula, a backhoe operator, digging a ditch for placement of a sewer line for a trailer court. The ditch was dug in an area that had been previously trenched for other purposes. COP personnel supervised the operations. Nikula was digging the ditch with a backhoe. Kemp followed the backhoe with a shovel, cleaning the bottom of the ditch and checking to see that the ditch was being dug on grade. To check the grade, Kemp compared the level of a mark on his shovel handle with a laser beam set by a COP supervisor. There were also stakes set at regular intervals along the ditch with specifications by which the diggers could double check the laser.
Kemp and Nikula began digging about 8:30 a.m. They had dug 150 to 200 feet of 4V& -foot-deep ditch over flat ground when the grade of the terrain began to rise abruptly. The plans specified a ditch that never exceeded 4V2-feet-deep. However, no one from COP had changed the setting of the laser to adjust for the changing terrain as was their responsibility. The diggers continued to follow the laser so the trench deepened rapidly. By 10:30 a.m. the trench had been dug another 50 to 75 feet in length and was 9-feet deep. During this time the diggers realized that the trench was becoming dangerously deep. They also knew that a trench box (a “cage” that is put in trenches to protect digger from cave-ins) was available on the job site. However, they chose to continue digging without the trench box.
*524 In the meantime, Nikula back-tracked over a portion of the ditch to dig it deeper to conform with the laser guide. Nikula believes this back-tracking may have fractured the dirt and contributed to the eventual cave-in. At the point where the backhoe had back-tracked, the dirt caved in, burying Kemp to his neck and causing the injury upon which this action is based.
Plaintiff sued the companies and Christian. Discovery was commenced by all the parties. The companies failed a motion for summary judgment in May 1984. Appellant filed a brief in opposition to the companies’ motion. Christian filed its motion for summary judgment in September 1984. No briefs or affidavits in opposition to Christian’s motion were filed. The District Court granted both motions for summary judgment without hearing in December 1984, and this appeal ensued.
Appellant contends the companies are liable to him based upon (1) nondelegable duties in the contract, (2) nondelegable duties arising from the inherently dangerous nature of or peculiar risk created by the work, (3) the control over the subcontractor’s work that contractor reserved in the subcontract, and (4) the “Safe Place to Work Statute,” Section 50-71-201, MCA. We will follow this general format in our discussion of the issues involving the companies. A discussion involving Christian’s duty will follow.
NONDELEGABLE DUTY BASED ON CONTRACT
Montana follows the general rule that “absent some form of control over the subcontractor’s method of operation, the general contractor and owner of the construction project are not liable for injuries to the subcontractor’s employees.” Shannon v. Howard S. Wright Construction Co. (1979), 181 Mont. 269, 275, 593 P.2d 438, 441. However, we recognized one of several exceptions to this general rule where nondelegable duties are created by contract. Stepanek v. Kober (Mont. 1981), 625 P.2d 51, 38 St.Rep. 385. Appellant argues that nondelegable duties were created by contract here so as to render the companies liable.
In Stepanek, the nondelegable duty which subjected the general contractor to liability to an employee of a subcontractor was created by a provision in the general contract between the general contractor and Yellowstone County. Specifically, that provision required the general contractor to be “responsible for initiating, maintaining, and supervising all safety precautions and programs” connected with construction. We held that this provision resulted in a *525 duty that could not be delegated to the subcontractor by a provision in the subcontract which purports to shift safety responsibilities to the subcontractor. There is no similar provision in the general contract between MPC and Bechtel in the instant case. In fact, there is no safety provision in the general contract. Therefore, nondelegable duty based on contract does not apply.
NONDELEGABLE DUTY BASED ON INHERENTLY DANGEROUS NATURE OF THE WORK
A general contractor may also owe the employee of a subcontractor a nondelegable duty of safety where the work is “inherently dangerous.” See Ulmen v. Schwieger (1932), 92 Mont. 331, 12 P.2d 856. On this issue appellant requests us to adopt Sections 416 and 427, Restatement of Torts, 2d:
“Section 416. Work Dangerous in Absence of Special Precautions
“One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
“Section 427. Negligence as to Danger Inherent in the Work
“One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor’s failure to take reasonable precautions against such danger.”
We note Comment a to Section 416 in the Restatement, which states: “The two rules [Section 416 and Section 427] represent different forms of the same general rules . . .” We will thus consider their application together.
The Supreme Court of North Dakota has interpreted Section 416 and Section 427 with respect to a sewer trench dug to a depth of six feet in sandy soil. See Peterson v. City of Golden Valley, North Dakota (N.D.1981), 308 N.W.2d 550. In Peterson, an employee of a contractor with the city was killed when the banks of the trench in which he was working caved in. The trench was not dug according to Occupational Safety and Health Administration (OSHA) regulations *526 or standard protective practices which call for sloping or use of a trench box whenever a trench exceeds five feet in depth. The court held that Section 416 and Section 427 did not operate to make the City vicariously liable for the omission of the contractor, because “this type of excavation when done with standard precautions, presents no extraordinary risk of caving in.” Peterson, 308 N.W.2d at 554. Peterson is on point with the instant case, and we adopt the North Dakota Supreme Court’s analysis.
In order for Section 416 to apply the work must present “a peculiar risk . . . unless special precautions are taken.” Section 427 is only applicable to work “involving a special danger . . . inherent in . . . the work.” Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, the risk or danger arose out of a failure to use standard precautions.
The OSHA regulations, project safety manual and deposition of the backhoe operator establish that sloping or using a trench box during trenching is standard procedure. Moreover, the subcontract specifically required the subcontractor to use standard precautions and follow regulations. The injury occurred after the diggers failed to use a trench box that they knew was available. Sections 416 and 427 are thus not applicable. We hold that the companies had no nondelegable duty under the inherent danger or peculiar risk exception to the nonliability rule.
CONTROL RESERVED IN THE SUBCONTRACT
Appellant also contends that the companies’ control over the subcontractor renders the companies liable. Section 414, Restatement of Torts, 2d, defines the duty of a general contractor or owner when control over the subcontractor is retained:
“Section 414. Negligence in Exercising Control Retained by Employer
“One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.”
Thus, the general contractor’s duty is one of reasonable care. He is not vicariously liable for the subcontractor’s negligence under this control exception to nonliability of general contractors and owners.
Here, by the subcontract the companies were to establish a project safety program. However, no control over the day-to-day im *527 plementation of the safety program was reserved by the companies. The subcontract places the responsibility for on-site implementation of the safety program and job safety on the subcontractor, COP. Thus, the companies’ duty under Section 414 extended only to the establishment of the safety program. There is no evidence that this duty was breached.
The companies’ duty to exercise reasonable care in its establishment of the safety program is more specifically defined within the Montana Safe Place to Work Statute, Section 50-71-201, MCA, which states:
“Every employer shall furnish a place of employment which is safe for employees therein and shall furnish and use and require the use of such safety devices and safeguards and shall adopt and use such practices, means, methods, operations, and processes as are reasonably adequate to render the place of employment safe and shall do every other thing reasonably necessary to protect the life and safety of employees.”
In applying the statute to the instant case, we find that the companies had a duty to require COP to use safe procedures and to take reasonable steps to ensure those procedures were followed. Such a duty does not require a general contractor to constantly oversee each individual task of the subcontractor. Only constant supervision could have prevented this accident.
The record is clear and undisputed that the companies required COP to use safety precautions and comply with regulations. The companies utilized daily spot checks and monitored injury reports to make sure the construction was proceeding safely. We find that the companies complied with their duty of reasonable care.
In summary, appellant has failed to establish vicarious liability based on nondelegable duty or breach of a duty based on control. We therefore affirm the District Court’s order of summary judgment in favor of the companies.
PROJECT ENGINEER’S DUTY
We will now consider Christian’s summary judgment. Appellant, despite ample opportunity at the District Court level and here on appeal, has presented no legal arguments or factual evidence to counter the District Court’s conclusion that Christian had no duty of safety. Christian’s contract with MPC is in the record and does not address safety.
The District Court’s conclusion is supported by this Court’s deci *528 sion in Wells v. Stanley J. Thill and Associates, Inc. (1969), 153 Mon. 28, 452 P.2d 1015. In Wells, the City of Belt contracted with Thill, an engineering company, to design a sewer project for the city. Thill’s contract with the city included only engineering and not safety responsibility. The city then contracted with Fedco, Inc., to construct the project. Wells was employed by Fedco. He was injured in a trench cave-in when safety precautions were not taken. We held that summary judgment in favor of Thill was proper because the duty of the engineer did not include safety and ran to the city and not other contractors.
Our holding regarding project engineers in Wells has not been altered by subsequent changes in Montana law on contractor duties to employees of subcontractors. See Stepanek, supra. We will not alter the holding now. Because the District Court's conclusion is supported by substantial evidence and Montana law, we affirm.
The District Court’s order granting summary judgment in favor of Christian and the companies is affirmed.
MR. JUSTICES HARRISON, WEBER and GULBRANDSON concur.