No. 89-452

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

GENE AND LESLIE MICHELETTO,

      Plaintiffs and Appellants,

  -v-

STATE OF MONTANA,

      Defendant and Respondent.

**FILED**

SEP 14 1990

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable Leonard Langen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Steven J. Harman, Anderson, Brown, Cebull, Fulton,
Harmon & Ross, Billings, Montana

        Theodore R. Dunn, Goetz, Madden & Dunn, Bozeman,
Montana

    For Respondent:

        K. Kent Koolen; Moulton, Bellingham, Longo & Mather;
Billings, Montana

Submitted on Briefs:  March 16, 1990

Decided:  September 14, 1990

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiffs appeal the grant of summary judgment to the State of Montana, acting through the Department of Highways, herein referred to as the State. Mountain States Telephone Company (Telephone Company) entered into a subcontract with the State. Gene Micheletto was seriously injured in the course of his employment by the Telephone Company and received workers' compensation benefits for that injury. Gene Micheletto and Leslie, his wife, then sought recovery in tort from the State in its capacity as general contractor. The plaintiffs now appeal the summary judgment for the State. We affirm.

The plaintiffs raise the following issues:

(1) Was it error for the District Court to conclude that the State as general contractor did not have a non-delegable contractual duty to supervise the safety of the trenching operations by the Telephone Company?

(2) Was it error for the District Court to conclude that trenching is not an inherently dangerous activity under the facts of this case?

(3) Were there disputed issues of material fact demonstrating control on the part of the State which prohibited summary judgment for the State?

In 1985 the State widened State Highway 200 between Sidney and Fairview as part of a federal aid road project. Such widening required the Telephone Company to relocate some of its cables which were buried adjacent to the existing roadway. The State and the

2

Telephone Company entered into a Utilities Agreement.

Gene Micheletto was employed as a lineman by the Telephone Company and assisted in the relocation of the buried telephone cable. The Telephone Company work crew dug a trench in connection with the cable relocation. On the afternoon of July 18, 1985, Micheletto entered the trench with the aim of digging under a culvert to assist in the cable relocation. While he was in the trench, a large portion of the trench caved in upon him, resulting in severe injury and disability.

Deposition witnesses testified that prior to the cave in, the trench was between six and seven feet deep and no shoring, sloping, or other support was used. Additional testimony established it had rained the previous day and a cave-in occurred earlier that day at a different location. The testimony established that an inspector employed by the State had observed the earlier cave-in after it had occurred.

Gene Micheletto received workers' compensation benefits from the Telephone Company. The plaintiffs brought suit against the State on several tort theories. The State moved for summary judgment on several grounds. In granting summary judgment for the State, the District Court made the following findings and conclusions:

> (2) Under the subcontract, The Telephone Company became a subcontractor and assumed the status of an independent contractor.
> (3) As a general rule, the State of Montana, as a general contractor, would not be liable for injuries suffered by an employee of the subcontractor.
> (4) A nondelegatable [sic] duty, based on contract, does not apply in this case.

(5) The State of Montana, as a general contractor, had no nondelegatable [sic] duty under the inherent danger or peculiar risk exception to nonliability rule.

(6) Plaintiff failed to establish vicarious liability based on breach of duty based on control.

(7) The duty of the State's project engineer did not include safety and did not run to the Plaintiff who was The Telephone Company's employee.

The plaintiffs appeal the granting of summary judgment to the State based upon the foregoing.

There is no dispute that the Telephone Company was a subcontractor of the State, that the Telephone Company was an independent contractor, and that the State was the general contractor.

The parties also agree that the general rule was properly stated by the District Court. In Kemp v. Bechtel Constr. Co. (1986), 221 Mont. 519, 720 P.2d 270, we stated the general rule as follows:

> Montana follows the general rule that "absent some form of control over the subcontractor's method of operation, the general contractor and owner of the construction project are not liable for injuries to the subcontractor's employees." Shannon v. Howard S. Wright Construction Co. (1979), 181 Mont. 269, 275, 593 P.2d 438, 441.

The issues framed by the plaintiffs correspond directly to the three exceptions to the foregoing general rule of non-liability on the part of the general contractor: (1) the non-delegable duty based on a contract exception; (2) the "inherently or intrinsically dangerous activity" exception; and (3) the negligent exercise of control reserved over a subcontractor's work exception. For further discussion of these exceptions, See Shannon v. Howard S. Wright Constr. Co. (1979), 181 Mont. 269, 593 P.2d 438; Storrusten

4

v. Harrison (1976), 169 Mont. 525, 533, 549 P.2d 464, 469; Wells v. Thill, (1969), 153 Mont. 28, 452 P.2d 1015; Kemp v. Bechtel Constr. Co.; and generally, Prosser, Law of Torts § 71 5th ed. 1984); Restatement (Second) of Torts §§ 410-429 (1965).

I

Was it error for the District Court to conclude that the State as general contractor did not establish a non-delegable contractual duty to supervise the safety of the trenching operations by the Telephone Company?

Plaintiffs contend that the contract between the parties raised a non-delegable duty with regard to safety in the trenching operations as to the State. This contention is primarily based on Paragraph 15 of the Utilities Agreement which provides in part:

> 15. Work done on Highway right-of-way with respect to the location of the facilities and in the manner which the facilities are installed or attached within the right-of-way must be approved by the District Engineer to insure that installation of the facilities will meet the "Standard Specifications for Road and Bridge Construction" as adopted by the Department.

Plaintiffs contend that this language created a duty on the part of the State to supervise the trenching operation and ensure his safety. As a part of this argument, the plaintiffs refer to the Standard Specifications for Road and Bridge Construction adopted by the State and which were in effect at the time. Such Standard Specifications contain the following with regard to excavations:

52.03 CONSTRUCTION REQUIREMENTS:

. . .

> All excavated material piled adjacent to the excavation or in a roadway or public thoroughfare shall be piled

5

and maintained so that the toe of the slope or the pile is at least 2 feet from the edge of the excavation. . . The walls and faces of all excavations in which employees are exposed to danger from moving ground shall be guarded by a shoring system, sloping of the ground, or some other equivalent means consistent with the type of excavation.

Standard Specifications For Road and Bridge Construction. 1981 ed. (adopted by the Montana Department of Highways and the Montana Highway Commission, March 1, 1981.) In addition, the Standard Specifications require that all excavations conform to the requirements of the U.S. Department of Labor, Occupational Safety and Health Administration [OSHA], and Safety and Health Regulations for Construction. The OSHA regulations include provisions regarding safety during excavation operations. See 29 C.F.R. § 1926.651(i)(1) (1986). The regulations require that trenches more than five feet deep shall be shored or sloped or otherwise supported to prevent cave-ins. 29 C.F.R. §1926.652 (1986). Like the Standard Specifications OSHA also requires that "spoils" (the material that is excavated from the trench) are stored at least two feet from the edge of the excavation.

The plaintiffs argue that Stepanek v. Kober Constr. Co. (1981), 191 Mont. 430, 434, 625 P.2d 51, 53, establishes the theory for non-delegable duty under the contract in this case. In this Court's analysis of Stepanek in Kemp v. Bechtel Constr. Co., the Court stated:

> In Stepanek, the non-delegable duty which subjected the general contractor to liability to an employee of a subcontractor was created by a provision in the general contract between the general contractor and Yellowstone County. Specifically, that provision required the general contractor to be "responsible for initiating, maintaining, and supervising all safety precautions and

6

programs" connected with construction. We held that this provision resulted in a duty that could not be delegated to the subcontractor. . . There is no similar provision in the general contract between MPC and Bechtel in the instant case. . . .

Kemp v. Bechtel Constr. Co., 720 P.2d at 274. Our present case does not contain a similar contractual provision establishing non-delegable duty.

In Kemp v. Bechtel Constr. Co., the employee of a subcontractor who had been injured in a trench cave-in sought recovery from the general contractor claiming that the general contractor had contractually assumed safety duties. In Kemp v. Bechtel Constr. Co., the subcontractor had agreed to "comply with all the applicable laws, regulations, and standards and the project safety program." The Court concluded that there was no provision in the contract between MPC and Bechtel which was similar to Stepanek and that as a result the theory of non-delegable duty based on contract did not apply.

In our case, under the Utilities Agreement, the Telephone Company was required to perform the work in accordance with the various specifications and safety requirements as previously outlined. Clearly the Telephone Company expressly assumed the safety responsibilities under the subcontract. The Utilities Agreement which constitutes the subcontract in the present case does not contain any provision requiring the State to be responsible for either initiating, maintaining or supervising safety programs as was present in Stepanek. We agree with the conclusion by the District Court that a non-delegable duty, based

7

on contract, was not assumed by the State. We hold that the District Court correctly concluded that the State as general contractor did not have a non-delegable contractual duty to supervise the safety of the trenching operations by the Telephone Company.

## II

Was it error for the District Court to conclude that trenching is not an inherently dangerous activity under the facts of this case?

As mentioned, the District Court concluded that the State did not have a non-delegable duty under the inherent danger or peculiar risk exception to the non-liability rule. As pointed out in Kemp v. Bechtel Constr. Co., two sections of the Restatement are applicable. Section 416 and 427, Restatement 2d of Torts, state:

> **Section 416. Work Dangerous in Absence of Special Precautions.**
> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
>
> **Section 427. Negligence as to danger inherent in the work.**
> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

On this issue the present case is indistinguishable from Kemp v.

8

<u>Bechtel Constr. Co.</u>   In its analysis of the claim of vicarious liability arising from the collapse of a trench, this Court in <u>Kemp v. Bechtel Constr. Co.</u>, 720 P.2d at 275, stated:

> The Supreme Court of North Dakota has interpreted § 416 and § 417 with respect to a sewer trench dug to a depth of six feet in sandy soil.  See Peterson v. City of Golden Valley, North Dakota (N.D. 1981), 308 N.W.2d 550.  In <u>Peterson</u>, an employee of a contractor with the city was killed when the banks of the trench in which he was working caved in.  The trench was not dug according to Occupational Safety and Health Administration (OSHA) regulations or standard protective practices which call for sloping or use of a trench box whenever a trench exceeds five feet in depth.  The court held that § 416 and § 427 did not operate to make the City vicariously liable for the omission of the contractor, because "this type of excavation when done with standard precautions, presents no extraordinary risk of caving in."  <u>Peterson</u>, 308 N.W.2d at 554.  <u>Peterson</u> is on point with the instant case, and we adopt the North Dakota Supreme Court's analysis.

This Court in <u>Kemp v. Bechtel Constr. Co.</u> then concluded:

> In order for § 416 to apply the work must present "a peculiar risk . . . unless special precautions are taken."   Section 427 is only applicable to work "involving a special danger . . . inherent in . . . the work."  Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, the risk or danger arose out of a failure to use standard precautions.

In its holding the <u>Kemp</u> Court then referred to OSHA regulations and other elements which are directly comparable to the present case.

The Court stated:

> The OSHA regulations, project safety manual and deposition of the backhoe operator establish that sloping or using a trench box during trenching is standard procedure.   Moreover, the subcontract specifically required the subcontractor to use standard precautions and follow regulations.  The injury occurred after the diggers failed to use a trench box that they knew was available.  Sections 416 and 427 are thus not applicable. We hold that the companies had no nondelegable duty under the inherent danger or peculiar risk exception to the

9

nonliability rule.

*Kemp v. Bechtel Constr. Co.*, 720 P.2d at 275. As previously described, in this case the Standard Specifications required that all excavation be guarded by a shoring system, sloping of the ground, or some other equivalent means consistent with the type of excavation; and also required all excavations conform to OSHA. We conclude that the *Kemp v. Bechtel Constr. Co.* decision is controlling on this issue. We hold that trenching is not an inherently dangerous activity under the facts of this case.

## III.

Were there disputed issues of material fact demonstrating control on the part of the State which prohibited summary judgment for the State?

Plaintiffs contend that summary judgment is inappropriate because of genuine issues of material fact as to whether the State negligently exercised control over the Telephone Company's trenching operation. See Rule 56(c), M.R.Civ.P. The core of the plaintiffs' contention is that the district engineer of the State *must* approve the *manner* used by the Telephone Company to relocate the cables, which establishes a reservation of control by the State over the Telephone Company's work.

Paragraph 15 of the Utilities Agreement provides:

> Work done on Highway right-of-way with respect to location of the facilities and in the manner which the facilities are installed or attached within the right-of-way must be approved by the District Engineer to insure that installation of the facilities will meet the "Standard Specifications for Road and Bridge Construction" as adopted by the Department.

10

The legal basis for the plaintiffs' claim is contained in Restatement (Second) of Torts § 414 which provides:

> **§ 414.  Negligence in Exercising Control Retained By Employer**
>      One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Before we further analyze the contractual provisions and the facts presented, we think it appropriate to discuss some of the policy considerations which must be considered and balanced, one against the other.  The facts establish that the Telephone Company clearly was negligent.  However, under our workers' compensation laws, the employee's recovery against his employer is limited to workers' compensation benefits.  The plaintiffs' seek to establish the right to recover amounts above the workers' compensation benefits from the State on the theory that it was negligent. Because of the serious injuries to Gene Micheletto, an argument can be made that we should allow recovery against the State in order that some additional damages may be paid to this severely injured worker.

As pointed out in <u>Kemp v. Bechtel Constr. Co.</u>, we have the Montana Safe Place to Work statute, § 50-71-201, MCA, which requires an employer to furnish a safe place to work and which requires the use of safety devices and safeguards.  As a part of that policy, it is important that general contractors who employ independent subcontractors require reasonable and specific safety

11

standards on the part of the subcontractor. Clearly it is in the best interest of all involved that the State here be required to insert safety precautions which must be performed by the Telephone Company, its subcontractor. It would result in a contradiction in policy if general contractors who employ independent contractors were encouraged to omit safety regulations upon a theory that a failure to make such provisions would grant greater protection against a claim of negligence by the employees of the subcontractor. Clearly that would not be sound public policy.

In general we conclude that before liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that the general contractor has assumed the responsibility for initiating, maintaining and supervising safety precautions as was present in the Stepanek contract. We conclude that the holding in Kemp v. Bechtel Constr. Co., is controlling on this issue.

In Kemp v. Bechtel Constr. Co. the Court quoted Restatement (Second) of Torts, § 414, and pointed out that a general contractor is responsible for his own duty of reasonable care, but is not vicariously liable for the subcontractor's negligence under this control exception. The Court then pointed out:

> Here, by the subcontract the companies were to establish a project safety program. However, no control over the day-to-day implementation of the safety program was reserved by the companies. The subcontract places the responsibility for onsight implementation of the safety program and job safety on the subcontractor, COP. Thus, the company's duty under § 414 extended only to the establishment of the safety program. There is no evidence that this duty was breached.

12

Kemp v. Bechtel Constr. Co., 720 P.2d at 275. The Court then analyzed § 50-71-201, MCA, the Montana Safe Place to Work statute and concluded that under the statute the general contractors had a duty to require the subcontractor to use safe procedures and to take reasonable steps to ensure those procedures were followed. The Court emphasized that such a duty does not require a general contractor to constantly oversee each individual task of the subcontractor - and that only constant supervision could have prevented this accident. The Court then reached the following conclusion:

> The record is clear and undisputed that the companies required COP to use safety precautions and comply with regulations. The companies utilized daily spot checks and monitored injury reports to make sure the construction was proceeding safely. We find the companies complied with their duty of reasonable care.

Kemp v. Bechtel Constr. Co., 720 P.2d at 276. In our case, in addition to Paragraph 15 of the Utilities Agreement, the subcontract included the Standard Specifications which required shoring systems, sloping of the ground, or some equivalent means in connection with trenching, and also incorporated the OSHA requirements which in substance require that trenches more than five feet deep shall be shored or sloped or otherwise supported to prevent cave-ins. We conclude that the State here had properly provided appropriate safety precautions in its contract with the Telephone Company in a manner directly comparable to the contract provisions in Kemp v. Bechtel Constr. Co. Notwithstanding that comparison, the plaintiffs contend that Paragraph 15 of the

13

Utilities Agreement established control. We will restate Paragraph 15 to emphasize only the key aspects which are applicable to this contention:

> Work done . . . <u>with respect to the location</u> of facilities and <u>in the manner</u> in which the facilities are installed or attached within the right-of-way must be approved by the district engineer to ensure that installation . . . <u>will meet</u> the "standard specifications" . . . as adopted by the Department [State]. (Emphasis added.)

In substance, the plaintiffs argue that the requirement of approval by the district engineer of the manner in which the facilities are installed establishes that the State retained control under § 414. We do not agree with that contention.

It is true that Paragraph 15 provides that the manner in which facilities are installed must be approved by the district engineer. It is also true the location of the facilities must be approved by the district engineer. Last, it is important to note that the requirements of both location and manner of installation are followed by the provision that this is done to ensure that installation <u>will meet</u> the standard specifications. We conclude that the requirements of Paragraph 15 could be met by a review on the part of the State district engineer of the detailed plans submitted by a subcontractor, without any review of the actual construction site. In addition, we emphasize that there is no specific provision in the subcontract which obligates the State of Montana to be responsible in any manner for initiating, maintaining, or supervising safety precautions and programs as described in <u>Kemp v. Bechtel Constr. Co.</u> and as was contained in

14

the Stepanek contract. As we examine Paragraph 15 we do not find provisions which clearly establish additional safety obligations on the part of the State. We conclude that the State here complied with its duty of reasonable care with regard to safety procedures. We further conclude that the making of spot checks by the State with regard to construction, including the presence of an inspector for the district engineer, do not establish any additional duty on the part of the State.

The dissent concluded that the State retained control over methods of work and operative detail, and as a result the Telephone Company was not entirely free to perform the work in its own way. We do not agree with that conclusion. The essence of Paragraph 15 is that the district engineer (the State) was required to approve the facilities to ensure that the installation met standard specifications. As a result, the Telephone Company was limited in its installation to the extent that it was required to comply with the standard specifications issued by the State. We do not conclude that such a limitation qualifies as a control limitation under the Restatement.

As quoted by the dissent, comment (c) to § 414 of the Restatement states that before the employer has retained control, there must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way. While the requirement that the Telephone Company comply with the standard specifications did mean that the Company was not entirely free to do the work in its own way, we do not believe that the

15

Restatement intended to suggest that requiring a subcontractor to comply with specifications or written plans constitutes a sufficient limitation so that control has been retained by the employer. In addition, as previously stated, we conclude that before liability is found on the basis of control by the general contractor, there must be a contractual provision which establishes that the general contractor has assumed the responsibility for initiating, maintaining and supervising safety precautions. We conclude that none of these tests were established by Paragraph 15.

We hold that the State complied with all contractual duties of reasonable care required under the contract and statutes, and that the State did not negligently exercise control over the trenching operation of the Telephone Company.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justice

_____
Hon. L. C. Gulbrandson, Retired
Justice, sitting in place of
Justice John C. Sheehy

16

Justice R. C. McDonough dissenting. Summary judgment is inappropriate in this case because genuine issues of material fact exist concerning whether the Department of Highways of the defendant (Department) negligently exercised control over the Telephone Company's operations. See Rule 56(c), M.R.Civ.P.

According to the wording of paragraph 15 of the Utility Agreement, the Department district engineer must approve the manner used by the Telephone Company to lay or relocate the cables. Paragraph 15 is as follows:

> Work done on Highway right-of-way with respect to the location of the facilities and in the manner which the facilities are installed or attached within the right-of-way must be approved by the District Engineer to insure that installation of the facilities will meet the "Standard Specifications for Road and Bridge Construction" as adopted by the Department. (Emphasis added.)

Under § 414 of the Restatement (Second) of Torts, this language could be construed as a reservation of control over the subcontractors which would give rise to a duty on the part of the Department:

> **§ 414. Negligence in Exercising Control Retained by Employer.**
> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. (Emphasis added.)

Under this section the Department or general contractor (employer) is not vicariously liable for the subcontractor's negligence, rather the general contractor has a separate duty of

17

reasonable care in exercising control. Kemp v. Bechtel Constr. Co. (1986), 221 Mont. 519, 526, 720 P.2d 270, 275. That is, regardless of whether the general contractor has assumed safety duties contractually, if the general contractor retains control over any part of an independent contractor's work the general contractor has a duty of reasonable care to third parties in exercising such control. Thus, a general contractor who attempts to delegate safety duties to a subcontractor contractually may still be directly liable for his own negligence if he retains the requisite amount of control over operations and exercises such control negligently. This is as it should be. We have here a claim of negligence brought by an employee of a subcontractor, which is a constitutional right of such employee under Section 16 of Article II of the 1972 Montana Constitution. It is important to note that this duty owed by the general contractor also applies to protect other persons not employees and the traveling public from negligence by the Department. See e.g. Ulmen v. Schweiger (1932), 92 Mont. 331, 12 P.2d 856. Public policy is not served by the narrow construction of the majority opinion.

I will now examine the scope of such a duty. In Storrutsen v. Harrison (1976), 169 Mont. 525, 534, 549 P.2d 464, 469, this Court recognized the rationale of comment (c) to § 414 which states the type of control that must be retained for the exception to be applicable:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order

18

the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way. (Emphasis added.)

Here, it can be argued that the telephone company was not entirely free to perform the work or install the cable in its own way; rather, paragraph 15 could be construed as a retention of control by the Department over methods of work and operative detail by expressly requiring approval by the distinct engineer. Such an interpretation involves a specific reservation of control over a portion of the construction work, to-wit: the installation. Note that the manner in which the work was done was not merely subject to the inspection, tests and approval of the Department, rather, the use of the word "must" seems to make approval of the methods of work mandatory. Thus, the contract is somewhat ambiguous regarding whether and how much control was actually reserved by the Department. It is permissible to look to extrinsic evidence, such as the conduct of the parties under the contract to resolve the ambiguity. Souders v. Montana Power Co. (1983), 203 Mont. 483, 486, 662 P.2d 289, 290; Section 28-2-905(2), MCA. Where ambiguity exists on the face of the contract, question of parties intent as to language involved should be submitted to the trier of fact. S-W Co. v. Schwenk (1977), 176 Mont. 546, 550, 568 P.2d 145, 147.

Here, the evidence suggests that the Department may have been exercising control through its inspectors who were present at the

19

job site. Thus, there are factual issues to be resolved regarding the purpose and duties of these inspectors that would clarify the question of whether the Department was in fact exercising retained control over the operations and how much control it exercised. If there is an exercise of retained control in this case involving operative detail, then it does not matter who expressly assumed safety duties under the contract, as the general contractor has a separate and distinct duty of reasonable care to third persons under § 414 of the Restatement in such cases.

It is contended that our holding in Kemp regarding the issue of control is dispositive of the issue raised here. However, the present case is distinguishable from Kemp. In Kemp the companies by contract were to establish a safety program. We held that the general contractor had a duty to require the subcontractor to take reasonable steps to ensure safety procedures were followed. Kemp, 720 P.2d at 276. Moreover, we held that such a duty does not require constant supervision of each individual task of the subcontractor. Id. It was sufficient in Kemp that the general contractor used daily spot checks and inspected injury reports to monitor project safety. In the instant case, like in Kemp, spot checks were employed by the Department. But here the Department's duty may have involved more than merely monitoring safety procedures; the Department could be interpreted to have specifically retained control over the manner in which the installation was done, giving rise to a duty of reasonable care to others under the Restatement. Whether the Department exercised

20

this control with reasonable care in compliance with the requirements of paragraph 15, the Restatement, and a review of the detailed plans is a question of fact.

Furthermore, in Kemp there was no evidence of a negligent exercise of control by the employer's acts as there is in this case. In Kemp, we concluded that "[o]nly constant supervision could have prevented . . . [the] accident." Kemp, 720 P.2d at 276. Here, the evidence suggests that the Department was in fact supervising the manner of installation when the accident occurred. The district engineer's inspector, Larry Wolf, although not inspecting or observing the work taking place in the trench at the time of the cave-in, was actually present at the job site when the cave-in occurred. He testified in his deposition that he was the principal inspector on the cable relocation project, although he maintained that he was not a safety inspector. He also testified that while at the job site that morning another portion of the trench had caved in. Wolf had examined the earlier cave-in. His deposition also indicates that he may have been aware that it would be necessary for someone to enter the trench to dig beneath a culvert in order to run the cable below the culvert. His notes regarding the accident indicate that he was aware of the absence of a shoring device in the trench. Also, Mr. Victor R. Scheuffle, the Department's district utility agent, testified in his deposition that on an earlier date he suggested to the telephone company that they use a trenching box or cage to alleviate cave-in problems associated with saturated ground conditions. In light

21

of the language in paragraph 15 of the utility agreement and the deposition testimony, there are genuine issues of material fact regarding how much control the Department reserved over the telephone company's relocation and whether the Department negligently exercised that control and proximately caused Micheletto's injuries. Without resolving factual issues, one cannot simply conclude that paragraph 15 does not constitute a reservation of control as a matter of law nor can one conclude that the Department complied with its duty of reasonable care. Therefore, under Rule 56(c), M.R.Civ.P., the District Court's grant of summary judgment was improper. I would reverse and remand on this issue.

_____
Justice

Justice Diane G. Barz concurs in the foregoing dissent.

_____
Justice

22

Justice William E. Hunt, Sr., dissenting:

I concur in the dissent of Mr. Justice McDonough. In addition, for the reasons stated in my dissent in Kemp v. Bechtel Constr. Co., 221 Mont. 519, 528-34, 720 P.2d 270, 276-80 (1986), I must dissent from the Majority's conclusion that trenching is not an inherently dangerous activity.

Trenching is precisely the type of inherently dangerous activity envisioned by the Restatement (Second) of Torts §§ 416 and 427 (1977). By its very nature, trenching is "likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken . . . ." Restatement § 416. Further, trenching involves "a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work . . . ." Restatement § 427. The danger inherent in or normal to trenching is exactly the type that appears in the present case--the risk that an excavation might collapse upon and injure an individual inside the trench.

The Majority apparently believes that trenching is not inherently dangerous because "standard" precautions, rather than "special" precautions, can be taken to prevent or lessen the perils of excavating. However, as I noted in my dissent in Kemp, 221 Mont. at 530-31, 720 P.2d at 278, the special precautions contemplated by the Restatement are precautions specially designed to counter the peculiar risks inherent in the activity, not extraordinary precautions. Indeed, the safeguards that may be taken to prevent the dangers inherent in trenching are "ordinary in the sense that a reasonably cautious contractor would take them." Kemp, 221 Mont. at 531, 720 P.2d at 278. What makes the precautions "special" in trenching is that they are needed to lessen the dangers inherent in or normal to the activity.

The Majority confuses the idea of "standard" precautions with the idea of "standard" activity, i.e., activity that is not inherently dangerous. The fact that "standard" rather than extraordinary safeguards may counter the risks inherent in

23

trenching does not mean that trenching itself is "standard" activity.

With or without precautions, the basic character of trenching remains inherently dangerous.  Therefore, the activity gives rise to a nondelegable duty on the part of the contractor to provide for the safety of the subcontractor's employees.

<span style="display:block; text-align:right;">_William E. Hewitt_<br>Justice</span>