Lowell A. McMILLAN; Michele L. McMillan; Stephanie L. McMillan, Plaintiffs–Appellees, Cross–Appellants,

v.

UNITED STATES of America, Defendant–Appellant, Cross–Appellee.

Nos. 95–35597, 95–35628.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1997.

Decided May 2, 1997.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c), Martin D. Lambert is substituted as defendant-appellant in place of his predecessor in office, Michael Salvagni.

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, Sitting by designation.

Steve Frank, United States Department of Justice, Washington, DC, for defendant-appellant-cross-appellee.

Roger M. Sullivan and Jon L. Heberling, McGarvey, Heberling, Sullivan & McGarvey, Kalispell, MT, for plaintiffs-appellees-cross-appellants.

Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

## OVERVIEW

Plaintiff Lowell McMillan ("McMillan") was injured when he was struck by a tree in the Kootenai National Forest in Lincoln County, Montana. McMillan, along with his wife, Michelle McMillan, and his daughter, Stephanie McMillan, (collectively "plaintiffs"), filed an action against the United States ("Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671–80, to recover damages arising out of the injuries sustained. After conducting a bench trial, the district court found the Government liable to McMillan, but only to the extent of 55% of the damages arising out of the injuries. The Government appeals and the plaintiffs cross-appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

FACTS AND PROCEDURAL HISTORY

The essential facts of the case are undisputed. At the time of his injury, McMillan was employed as a sawyer with Anderson Logging Company, Inc. ("Anderson"). The accident occurred in the Kootenai National Forest where Anderson was building a road pursuant to a contract with the United States Forest Service.

This contract required Anderson to cut all of the trees in the right-of-way corridor. At least 20% of the standing trees in this right-of-way were snags (dead standing trees). The contract also contained provisions informing Anderson that it was responsible for initiating and maintaining an accident prevention program; for ensuring that its employees' working conditions were not unsanitary, hazardous or dangerous to employee health and safety; and providing that Anderson was required to follow all applicable safety and health regulations, including the Occupational Safety and Health Administration ("OSHA") regulations with respect to safety. The contract explicitly directed Anderson to comply with OSHA regulations regarding training in avoidance of unsafe conditions and control of hazards.

On July 13, 1987, McMillan was cutting trees on a strip of the right-of-way corridor below a strip being cut by fellow Anderson employee Paul Scroggie. McMillan finished his strip and made voice contact with Scroggie, telling him he was going to pass to get to the next strip to be cut on the right-of-way. Scroggie yelled back, telling McMillan to wait because he was going to finish felling a tree. McMillan went back alongside his strip, picked up his gear and began to pass the strip being cut by Scroggie, staying twenty to thirty feet outside the right-of-way corridor.

As McMillan approached Scroggie, he stopped behind two trees outside the right-of-way corridor and waited for Scroggie to fell the tree. McMillan's location was more than one tree length away from Scroggie, but less than two. The men did not reestablish verbal or visual contact at that time. Although McMillan knew where Scroggie was, Scroggie did not know where McMillan was when he felled the tree.

Scroggie felled the tree into a group of trees in the right-of-way, striking one of the trees in the group which then fell out of the right-of-way. McMillan watched the tree that Scroggie felled hit the ground, then he began walking and was struck by the tree that fell out of the right-of-way. The tree that Scroggie felled was a snag, as was the one that struck McMillan.

As a result of the accident, McMillan was rendered a paraplegic. McMillan, along with his wife and his daughter, filed an action against the United States under the FTCA to recover damages arising out of the injuries sustained in the accident. After conducting a bench trial, the district court held that the Government had a nondelegable duty to ensure that Anderson employed proper safety precautions and that the Government breached this duty by failing to inquire into the safety precautions of Anderson, including whether a safety program had been implemented; by failing to conduct inspections to determine whether safety precautions were being taken; and by ignoring Anderson's deficient safety practices. The district court also found that, by negligently standing too close to Scroggie while Scroggie was sawing and by failing to let Scroggie know where he was while waiting, McMillan breached his duty to protect and conduct himself in a reasonable manner. Therefore, the district court found that only 55% of the total damages arising out of McMillan's injuries were attributable to the Government, with the other 45% attributable to McMillan. The district court accordingly reduced McMillan's gross damages of $4,762,686 by 45%, awarding McMillan damages of $2,619,477 against the Government. The Government timely appeals, claiming that the district court erred in finding that the activity McMillan was involved in was inherently dangerous.[1] The plaintiffs cross-appeal, claiming that the district court erred in finding that McMillan

---

1. The Government does not appeal, and we therefore do not address, the extent of the duty that the district court imposed.

was 45% negligent and offsetting damages for comparative negligence.

## ANALYSIS

A. Governmental Liability Based on Montana's Nondelegable Duty Exception for Inherently Dangerous Activities

Under the FTCA, the United States is liable for certain torts "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, "in accordance with the law of the place where the [alleged] act or omission occurred," 28 U.S.C. § 1346(b). McMillan's injury occurred in Montana. Therefore, Montana law applies to the resolution of this case. *See McCall v. United States Dep't of Energy Through Bonneville Power Admin.*, 914 F.2d 191, 193 (9th Cir.1990).

 Montana follows the general rule that a general contractor or project owner is not liable for injuries sustained by the employees of a subcontractor. *Kemp v. Bechtel Constr. Co.*, 221 Mont. 519, 720 P.2d 270, 274 (1986). However, Montana has adopted sections 416 and 427 of the Restatement (Second) of Torts, which provide an "inherently dangerous" exception to the general rule.[2] *See McCall*, 914 F.2d 191, 195; *Micheletto v. State*, 244 Mont. 483, 798 P.2d 989, 993 (1990); *Bechtel Constr. Co.*, 720 P.2d at 274. Under this exception, where a subcontractor is performing inherently dangerous work, and the general contractor should have reasonably known of the inherent danger, the general contractor has a nondelegable duty to ensure that the subcontractor employs proper safety precautions. *See McCall*, 914 F.2d at 193–95. Work is not considered in-

herently dangerous if the work presented no peculiar risk or inherent danger when standard precautions are taken. *Micheletto*, 798 P.2d at 993–94; *Kemp v. Big Horn County Elec. Coop.*, 244 Mont. 437, 798 P.2d 999, 1003–04 (1990). The comments to sections 416 and 427 make it clear that the general contractor must have reasonably contemplated the danger at the time that the contract was executed, and cannot shift the responsibility for such dangers, or for taking precautions against them, to the subcontractor.[3] Restatement (Second) of Torts § 416 cmt. a (1965); Restatement (Second) of Torts § 427 cmt. d (1965).

The district court found that the activity involved in the present case-the felling of trees in a right-of-way corridor where over 20% of the trees were snags and where all the trees had to be felled-was inherently dangerous. The Government appeals this finding.

### 1. *Standard of Review*

The parties disagree on the standard that this court applies in reviewing a district court's decision that a particular activity is inherently dangerous. The Government argues that the determination of whether an activity is inherently dangerous is a question of law reviewed *de novo*. The plaintiffs argue that it is a question of fact reviewed for clear error.

 We apply a federal standard of review to a district court's application of state law in an FTCA case. *Miller v. United States*, 587 F.2d 991, 994 (9th Cir.1978). In our previous cases dealing with the question of whether, under Montana law, an activity is

---

**2.** Section 416 provides:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Section 427 provides:

One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to

know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

**3.** These same rules apply to a project owner who has hired a contractor to perform work. *See Bechtel Constr. Co.*, 720 P.2d at 274. To prevent any confusion as to the status of the parties, this opinion will refer to the Government as the "general contractor" and Anderson as the "subcontractor."

inherently dangerous, we have been faced with a district court's grant of summary judgment and have therefore reviewed the case *de novo.* *See Crane v. Conoco, Inc.,* 41 F.3d 547 (9th Cir.1994); *McCall,* 914 F.2d 191. However, we have reviewed an analogous ruling that a task was "extra hazardous" as a finding of fact subject to the clear error standard. *Barron v. United States,* 654 F.2d 644, 646–47 (9th Cir.1981) (applying Hawaii law).

Most jurisdictions explicitly addressing the issue have held that the determination of whether an activity is inherently dangerous is generally a question of fact for the jury. *See, e.g., Donovan v. General Motors,* 762 F.2d 701, 703 (8th Cir.1985) (interpreting Missouri law); *Schultz & Lindsay Constr. Co. v. Erickson,* 352 F.2d 425, 436 (8th Cir. 1965) (interpreting North Dakota law); *Caudel v. East Bay Mun. Util. Dist.,* 165 Cal. App.3d 1, 211 Cal.Rptr. 222, 227 (1985); *Western Stock Ctr., Inc. v. Sevit, Inc.,* 195 Colo. 372, 578 P.2d 1045, 1050 (1978); *Levy v. Currier,* 587 A.2d 205, 210 (D.C.1991); *Warren v. McLouth Steel Corp.,* 111 Mich.App. 496, 314 N.W.2d 666, 669 (1981); *Christie v. Ranieri & Sons,* 194 A.D.2d 453, 599 N.Y.S.2d 271, 272 (N.Y.App.Div.1993). However, as the Eighth Circuit pointed out in *Donovan:*

> [A]ny issue of fact can become an issue of law for the court if the historical facts are undisputed and reasonable minds could not differ on the ultimate fact. Here the historical facts, the nature of the work, are undisputed, but reasonable minds could differ on whether working on an unfinished roof at a height of approximately 28 feet is work which "necessarily presents a substantial risk of damage unless adequate precautions are taken."

762 F.2d at 703. Because reasonable minds could differ as to whether the activity involved was "inherently dangerous," the *Donovan* court held that the determination was a question of fact for the jury. *Id.* at 704. We adopt the reasoning of the *Donovan* court and hold that where reasonable minds could differ as to whether an activity is inherently dangerous, the determination is a question of fact to be determined by the fact-finder.

In the present case, the evidence in the record showed that McMillan and Scroggie were felling trees in a right-of-way where at least 20% of the standing trees were snags and all the trees in the right-of-way had to be cut. The plaintiffs' logging expert testified that even for an advanced sawyer who takes all safety precautions, the degree of danger in felling snags in a right-of-way corridor remains extremely high due to the physical unpredictability of snags. The Government's tree felling expert testified that the felling of snags is extremely hazardous and that the Forest Service instructs its employees to walk away from a snag that the employee does not feel comfortable felling because of risk of injury. However, the Government's expert also testified that if standard precautions are taken, the felling of snags is not necessarily hazardous.

■ Based on this testimony, reasonable minds could differ as to whether the felling of trees in a right-of-way where at least 20% of the standing trees were snags and all the trees in the right-of-way had to be cut was an inherently dangerous activity. We therefore hold that the determination of whether the activity was inherently dangerous was a question of fact for the fact-finder. *See id.* Our review of the district court's decision, sitting as the fact-finder on this issue, is thus based on the clearly erroneous standard. *See* Fed.R.Civ.P. 52(a).

"[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Construction Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 623, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993) (quotations omitted). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Service Employees Int'l Union v. Fair Political Practices Comm'n,* 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)), *cert. denied,*

505 U.S. 1230, 112 S.Ct. 3056, 3057, 120 L.Ed.2d 922 (1992).

2. *Discussion*

■ The district court found that the activity involved in this case was inherently dangerous even when standard safety precautions were taken. The Government argues that in so finding, the district court erred as a matter of law. We disagree.

First, as previously stated, reasonable minds could differ as to whether or not the activity was inherently dangerous. Therefore, the inherently dangerous issue is a question of fact, not a question of law. *See Donovan,* 762 F.2d at 703–04.

Second, the district court's finding is soundly based on the evidence in the record. The evidence showed that logging is, in general, a dangerous occupation. In fact, the preamble to OSHA's Notice of Proposed Rule Making for Logging Operations states that logging is one of the most dangerous occupations. The facts peculiar to the present case further compound the general danger inherent in logging.

The activity was occurring in a right-of-way corridor. The felling of trees in a right-of-way is high in danger due to the small margin of error in tree placement, the requirement that "hang-ups" be cut out by the sawyer, and the necessity of sawyers passing one another as they progress down the right-of-way.[4]

Furthermore, the activity involved cutting *all* of the trees, including the more than 20% snags, in the corridor. The evidence in the record shows that the felling of snags is extremely dangerous. This danger arises due to the inherent nature of snags. For example, vibrations created by felling other trees can cause portions of or entire snags to fall. This can occur minutes after a nearby tree has been felled, creating a silent, delayed hazard. Also, because snags are, by definition, dead, they are in the process of

structural decay: the center may be hollow, roots may be rotten, and limbs and tops may be decayed and easily broken off, potentially falling on the sawyer. Because of the dangerous nature of snags, they have been dubbed "widow-makers." Finally, due to their unpredictable nature and the lack of weight in their upper branches, snags are particularly difficult to directionally fell.

Third, the Government's approach ignores the fact that the inquiry necessary to determine whether an activity is inherently dangerous is very fact-specific. The Montana cases, and our cases interpreting Montana law, have carefully evaluated the facts and circumstances of the activity involved before determining whether or not the particular activity is inherently dangerous.

In *Bechtel Constr. Co.,* 720 P.2d at 272, the subcontractor was digging a ditch when the dirt caved in, burying the plaintiff to his neck and causing injury. The court stated:

The plans specified a ditch that never exceeded 4½–feet–deep. However, [none of the subcontractor's employees] had changed the setting of the laser to adjust for the changing terrain as was their responsibility.... By 10:30 a.m. the trench had been dug another 50 to 75 feet in length and was 9–feet deep. During this time the diggers realized that the trench was becoming dangerously deep. They also knew that a trench box ... was available on the job site. However, they chose to continue digging without the trench box.

. . . .

... Here, the type of trenching contemplated in the subcontract presented no peculiar risk or inherent danger. Rather, the risk or danger arose out of a failure to use standard precautions.

*Id.* at 273, 275.

In *Micheletto,* 244 Mont. 483, 798 P.2d 989, the plaintiff was injured when a trench that was being dug caved in on him. The court

4. The cutting of a right-of-way corridor works as follows: Each sawyer selects a section of the corridor ranging in length from 500 to 1,000 feet. The sawyer begins surrounded by trees and cuts a "hole" by finding a gap to fell the first trees into. Trees are generally laid end-to-end, within the bounds of the right-of-way. When a sawyer completes felling all trees in his strip, he must pass all sawyers who are ahead of him to move further up the right-of-way corridor to begin a new strip.

examined the standard specifications of the contract and noted that it required that all excavations be guarded by a shoring system, sloping of the ground, or some other equivalent means, and required that the excavation conform to OSHA standards. The court held that the trenching activity involved was not inherently dangerous. *Id.* at 994.

In *Big Horn*, 244 Mont. 437, 798 P.2d 999, the plaintiff was injured when the cables broke on a bucket lift in which the plaintiff was riding, the bucket turned upside down and the plaintiff fell to the ground. The plaintiff had a safety belt, but was not wearing it at the time of the accident. The court stated:

> [T]he use of the bucket on the High Ranger bucket lift was dangerous to the plaintiff because a safety belt was not used. Had this standard precaution been used, there would have been no extraordinary risk as the result of the use of the High Ranger bucket lift. In this case, the failure to attach the safety belt in the use of the equipment is comparable to the failure to use trench box or other safety precautions in both *Kemp v. Bechtel Constr. Co.* and in *Micheletto*. We conclude that under the facts in the present case, the work was not inherently dangerous.

*Id.* 798 P.2d at 1004.

In *McCall*, 914 F.2d 191, the plaintiff was injured when he fell after his lineman's belt failed while he was suspended from an electrical line tower over one hundred feet above the ground. We reversed the grant of summary judgment for the Government, holding that the plaintiff "produced evidence that he was injured while performing an inherently dangerous task, namely the suspension of his body from an electrical line tower over 100 feet above the ground." *Id.* at 195.

In *Crane*, 41 F.3d 547, the plaintiff was injured while making repairs at an oil refinery. The plaintiff had climbed onto a pipe rack, a permanent fixture of the refinery consisting of lines of pipe joining pieces of equipment, to determine the materials needed for the repair. While standing on the pipe rack, the plaintiff noticed workers suddenly throwing their tools, running and yelling, "Get out! Get out!" Panicking, the plaintiff fell while attempting to reach the ground by lowering himself onto a heat exchanger below the pipe rack. We affirmed the district court's grant of summary judgment for the defendant:

> In the instant case, the precautions Conoco allegedly should have taken (warnings about fire hazards, safety instruction, indication of escape routes) were, in the words of [Crane's] own expert, "standard" rather than "special." Therefore, the district court was correct in finding sections 416 and 427 inapplicable. Because the work in which Crane was involved was not, under Montana law, inherently dangerous, we hold that the [inherently dangerous] exception to the rule of nonliability was not met.

*Id.* at 552.

In the present case, the plaintiffs' logging expert testified that even for an advanced sawyer who takes all safety precautions, the degree of danger in felling snags in a right-of-way corridor remains extremely high due to the physical unpredictability of snags. Thus, unlike *Bechtel Constr. Co.*, *Micheletto*, *Big Horn*, or *Crane*, the evidence in the present case indicates that at the time the contract was entered, the Forest Service should have reasonably contemplated that the activity (cutting all of the trees in a right-of-way containing at least 20% snags) was inherently dangerous and that the danger could not be eliminated with the use of "standard" precautions.[5] The Government therefore had a nondelegable duty under sections

---

**5.** This particular accident would have been avoided if McMillan had stayed two tree-lengths away from Scroggie. The two-tree-length rule is a standard precaution in which McMillan had not been trained. However, McMillan's expert testified, and the district court found, that even training the sawyers in the two-tree rule would not have eliminated all the inherent dangers from this particular job. On that basis, the court found that the Government had a nondelegable duty to McMillan because the contract contem-

plated inherently dangerous work; and it found that the accident resulted from the Government's breach. Thus, although the immediate cause of the accident-Scroggie's failure to follow the two-tree-length rule-was not one of the "inherent dangers" of this job, the Government's duty under the *Restatement* had already attached *when the contract was signed,* and the court found that the Government proximately caused the harm by

416 and 427 to ensure that Anderson employed proper safety precautions. *See McCall,* 914 F.2d at 193–95.

The Government's reliance on *Peone v. Regulus Stud Mills, Inc.,* 113 Idaho 374, 744 P.2d 102 (1987); *McCubbin v. Walker,* 256 Kan. 276, 886 P.2d 790 (1994); *Reed v. Ocello,* 859 S.W.2d 242 (Mo.Ct.App.1993); and *Lane–Hill v. Ruth,* 910 P.2d 360 (Okla.Ct. App.1995) is misplaced. *Lane–Hill, McCubbin* and *Reed* all dealt with tree trimming and/or tree removal in a residential setting and are thus distinguishable on that basis alone. In *Peone,* the Idaho Supreme Court declined to determine whether logging is an inherently dangerous activity. 744 P.2d at 103 n. 1. Although the court did state that the felling of a snag is inherent in a logging operation and is therefore not a "peculiar" risk, the court went on to state: "The question of whether logging is an inherently dangerous activity is saved for a later day." *Id.*

The district court's holding-that the felling of all trees in a right-of-way corridor containing at least 20% snags was inherently dangerous-was soundly based on the evidence in the record and therefore not clearly erroneous. As the Government has not appealed the district court's rulings on the scope of its duty, or the nature of the breach, we express no opinion on what the Government had to do to avoid liability. We hold only that because the finding of inherent danger was not clearly erroneous, the Government had a nondelegable duty to McMillan under the *Restatement.* We must conclude that the Government breached this duty because it has not appealed the ruling that it did.

**B. Comparative Negligence**

Plaintiffs argue that the district court erred by reducing damages by 45% for contributory negligence. They argue that the Government violated the Montana Safe Place to Work Act ("Act"), Mont.Code Ann. § 50–71–201, and the Act does not permit such an offset.

Before the district court, plaintiffs argued that the Government was liable based on either Montana's nondelegable duty exception for inherently dangerous activities or under the Montana Safe Place to Work Act.

The district court declined to address the plaintiffs' claim that the Act was violated because it based liability on the inherently dangerous exception. Plaintiffs did not seek reconsideration of this holding.

As to the issue of contributory negligence, plaintiffs made the following alternative arguments: (1) that McMillan was not negligent; (2) that the Forest Service's negligence far outweighed McMillan's own negligence; or (3) that 90% of the comparative negligence should be assigned to the Forest Service and 10% to McMillan. Plaintiffs did not argue, however, that comparative negligence did not apply under the Act. In these circumstances, we will not consider for the first time on appeal plaintiffs' argument that the Act forbids reducing the damages. *See United States v. Whitten,* 706 F.2d 1000, 1012 (9th Cir.1983) (court will not reach arguments not raised in the trial court absent special circumstances).

Likewise, we decline to address plaintiffs' argument that under Montana common law, a worker cannot be held contributorily negligent for merely working in a hazardous work environment in accordance with the employer's safety standards and procedures. This argument was raised for the first time in the plaintiffs' reply brief and has therefore been waived. *See International Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in [the plaintiffs' opening] brief.").

## CONCLUSION

The district court's holding that the activity of felling all of the trees in a right-of-way corridor containing at least 20% snags is inherently dangerous is affirmed. The district court did not err when it reduced McMillan's damages for contributory negligence, as McMillan did not argue that Montana law precludes an offset.

**AFFIRMED.**

---

failing to see that Scroggie was trained to avoid

non-inherent dangers.